SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State of New Jersey v. Humfrey A. Musa** (A-78-13) (073268)

**Argued March 2, 2015 -- Decided August 18, 2015**

**ALBIN, J., writing for a unanimous Court.**

The issue in this appeal is whether the trial court properly impanelled an alternate juror pursuant to Rule 1:8-2(d)(1), after the juror failed to appear for deliberations, without first inquiring of the jury about the reasons for the juror's absence.

On March 25, 2010, at approximately 5:25 p.m., Booney Davidson was walking in the City of East Orange, on his way home from work, when he was approached by a person he later identified as defendant. Defendant, who had been walking behind two or three other men, said to Davidson, "pops, give me your money." Thinking the remark was made in jest, Davidson replied, "you kidding[?]" Defendant then pushed Davidson against a wall and snatched $31 from Davidson's pants pocket. Defendant left the scene, and Davidson continued on his way home. When Davidson came upon a police officer, he reported the crime and described the men. A police dispatch about the robbery followed.

Not far from the site of the robbery, East Orange Police Detective Robert Wright observed four men, including defendant, generally fitting the description in the dispatch. Detective Wright and his partner detained the four men while another officer transported Davidson to the scene. On his arrival, Davidson identified defendant as the robber and cleared the other men of having any involvement in the crime. Defendant was then placed under arrest. From defendant's left front pocket, the police recovered $31 in denominations that matched those stolen from Davidson. At headquarters, Davidson again identified defendant, this time from an array of eight photographs.

Defendant was indicted for second-degree robbery. A jury trial was conducted on February 2, 3, and 4, 2011. After the State's presentation, the defense rested without calling any witnesses. In summation, defense counsel raised the defense of mistaken identification, but neither side requested an identification charge. On the second day of trial, February 3 at 11:57 a.m., the jury began its deliberations. At 4:18 p.m., in the presence of counsel, the court acknowledged receipt of a note from the jury. The top of the note read: "Still undecided. What do we do now?" Below that message, the jury listed three questions: "How much time are we allotted tonight? Can a particular juror be excused from the case? And can we get an easel with a marker?"

The court told the jurors that they would adjourn for the evening and continue their deliberations in the morning. It also pledged to have an easel and marker available when they began their session. The court responded to the question whether "a particular juror [could] be excused from the case" by generally explaining that a juror could not be excused for reasons related to differences with other jurors, but could for personal reasons, such as illness. The next day, Juror Number 2 did not report to the courtroom at 9:30 a.m., as required. The court had calls made to locate the juror. By 11:23 a.m., the court decided, over the objection of defense counsel, to replace Juror Number 2 with an alternate juror. The court declined defense counsel's request that the jurors be questioned about whether Juror Number 2 was the subject of the previous day's note. The jury deliberated for one hour and fifty minutes and then returned a verdict of guilty on the charge of second-degree robbery.

Defendant moved for a new trial on the ground that the court erred in substituting an alternate juror for missing Juror Number 2. The court denied that motion, determining that the note submitted by the jury did not provide meaningful information from which any firm conclusions could be drawn. More specifically, the court observed that nothing in the record supported the assumption that "there was a single dissenting juror," that "the jury had already come to an agreement, but for the presence of that single juror," or that "Juror Number 2 . . . was the phantom dissenter." The court also noted the complete absence of any evidence that Juror Number 2 possessed a bias or some other prejudicial disposition that tainted the deliberations. In addition, the court found that the deliberations had not progressed so far that substitution of an alternate was precluded.

In an unpublished decision, the Appellate Division reversed the conviction, finding that the trial court erred in making the substitution under Rule 1:8-2(d)(1) before exploring "whether the juror's failure to return to court was for reasons personal to the juror or due to the juror's interaction with the jury." The Appellate Division remanded for a new trial and directed that "the [trial] court should charge the jury on identification since identification is a significant issue in this case."

The Supreme Court granted the State's petition for certification. 217 N.J. 296 (2014).

**HELD**: Juror Number 2's failure to appear for the second day of deliberations amounted to an "inability to continue" under Rule 1:8-2(d)(1) and substituting an alternate juror for the missing juror was permissible. The matter is remanded to the Appellate Division to address the issue it did not reach: whether the trial court's failure to give an identification charge denied defendant a fair trial.

1. Rule 1:8-2(d)(1) is intended to strike a balance between a defendant's right to a fair trial decided by an impartial jury and judicial economy. Nevertheless, a juror may not be replaced if to do so would "pose a threat to the integrity or independence of the deliberative process." State v. Jenkins, 182 N.J. 112, 124 (2004). The removal of a juror because he is disputatious and does not share the views of other jurors would undermine the very essence of the free and open debate that is expected of jury deliberations. For that reason, the Court has "restrictively interpreted the phrase 'inability to continue' in Rule 1:8-2(d)(1) to . . . forbid[] juror substitution when a deliberating juror's removal is in any way related to the deliberative process." Ibid. The removal must be for reasons personal to the juror. Substituting an alternate juror for a deliberating juror who fails to report for service is permissible for the same reason that substitution is allowed under Rule 1:8-2(d)(1) for illness and death. Common sense suggests that an absent juror fits into the category of "inability to continue" because a juror who is not present in the jury room is unable to participate in any way -- as an assenter, dissenter, or passive listener -- in the deliberations. The court does not have to cede to the absent juror control over the fate of the trial. After waiting a reasonable interval and making inquiries to locate the missing juror, the court has the discretion to proceed with the trial and substitute an alternate juror on the panel. (pp. 13-18)

2. Any inquiry to determine whether a deliberating juror should be removed and replaced with an alternate must be carefully circumscribed to "protect the confidentiality of jury communications." State v. Ross, 218 N.J. 130, 147 (2014). Generally, if a court inquires of a juror on the subject of "inability to continue," the questions must be carefully crafted to elicit answers that only bear on reasons personal to the juror and that in no way elicit the drift of the deliberations or voting inclinations of any juror. This is not to suggest that there is an inflexible rule that applies to the myriad scenarios that may call for judicial inquiry of a jury, including scenarios involving the introduction of taint into the jury room. Suffice it to say that inquiry into the deliberative process -- delving into the thoughts and views of jurors -- is forbidden. (pp. 18-20)

3. The Court does not know whether the third question -- "Can a particular juror be excused from the case?" -- was provoked because of a juror's illness, need to attend to a sick relative or child-care responsibilities, financial hardship due to absence from work, discord with other jurors, or some other reason. Defendant's supposition that the note indicated "something unusual and troubling [was] going on in the jury room" is nothing more than speculation. In addition, the Court does not know whether Juror Number 2 was the same juror referred to in the note. But even if the Court were to engage in the unwarranted assumption that Juror Number 2 was the subject of the note, she had no right to purposely absent herself from jury service without permission of the court -- whatever the reason. A single juror cannot nullify jury deliberations -- and the entire trial process -- by refusing to be physically present in the jury room. Although some limited form of questioning might have been reasonable, the Court cannot conclude that the decision not to pursue an inquiry in this delicate area constituted an abuse of discretion warranting a mistrial. Questioning, if not properly narrowed, had the potential to impermissibly infringe on the jury's deliberative process. Juror Number 2's failure to appear for the second day of deliberations amounted to an "inability to continue" under Rule 1:8-2(d)(1) and substituting an alternate juror for the missing juror was permissible. (pp. 20-25)

The judgment of the Appellate Division is **REVERSED** and defendant's conviction for second-degree robbery is **REINSTATED**. The matter is **REMANDED** to the Appellate Division to address the issue it did not reach: whether the trial court's failure to give an identification charge denied defendant a fair trial.

2

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN's opinion. JUSTICE FERNANDEZ-VINA did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

HUMFREY A. MUSA,

    Defendant-Respondent.

Argued March 2, 2015 – Decided August 18, 2015

On certification to the Superior Court,
Appellate Division.

Stephen A. Pogany, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued
the cause for appellant (Carolyn A. Murray,
Acting Essex County Prosecutor, attorney).

Marcia H. Blum, Assistant Deputy Public
Defender, argued the cause for respondent
(Joseph E. Krakora, Public Defender,
attorney).

Emily R. Anderson, Deputy Attorney General,
argued the cause for amicus curiae Attorney
General of New Jersey (John J. Hoffman,
Acting Attorney General, attorney).

JUSTICE ALBIN delivered the opinion of the Court.

In this criminal case, at the conclusion of the first day of jury deliberations, the jury sent a note to the court asking: "Can a particular juror be excused from the case?" The court responded to the question appropriately, generally explaining

that a juror could not be excused for reasons related to differences with other jurors, but could for personal reasons, such as illness. The court gave the jurors the opportunity to raise the issue the next day at sidebar. No one did so.

The following day, Juror Number 2 did not appear for service. Over the objection of defense counsel, the trial court impanelled an alternate juror. The court declined defense counsel's request that the jurors be questioned about whether Juror Number 2 was the subject of the previous day's note. After the jury returned a guilty verdict, defense counsel moved for a mistrial based on the juror substitution. That motion was denied.

The Appellate Division reversed the conviction, finding that the trial court erred in making the substitution under Rule 1:8-2(d)(1) before exploring "whether the juror's failure to return to court was for reasons personal to the juror or due to the juror's interaction with the jury."

We do not agree with the Appellate Division that the trial court's decision to place an alternate juror on the panel, without inquiring of the jury about the reasons for Juror Number 2's absence, was a fatal error requiring that the jury's verdict be overturned. The court was well within its discretion to make the juror substitution under Rule 1:8-2(d)(1) -- even without an inquiry of the jury. That does not mean it would have been

2

unreasonable for the trial court to make some limited inquiry, provided it would not have exposed any information about the deliberative process.

Here, the court did not remove the juror from the panel. Instead, the juror either did not return intentionally or faced some disabling circumstance that prevented her from returning. The trial court was not required to declare a mistrial because of Juror Number 2's non-appearance.

A juror's unexplained absence from the courthouse on deliberation day cannot, alone, sabotage a trial. Moreover, it is difficult to imagine that an inquiry of the jury would have made a difference. The court would not have been compelled to scuttle the trial even had it known that the juror was unable to participate for personal reasons or was unwilling to come to the courthouse to participate. Under those circumstances, a juror cannot control the fate of a trial. Importantly, we do not know why Juror Number 2 did not return for the second day of deliberations. Unfounded speculation cannot be the basis for overthrowing a jury verdict.

We therefore reverse the judgment of the Appellate Division and remand to that court for consideration of an unresolved issue: whether the trial court's failure to give an identification charge denied defendant a fair trial.

I.

3

A.

Defendant Humfrey A. Musa was indicted for second-degree robbery, N.J.S.A. 2C:15-1. A jury trial was conducted on February 2, 3, and 4, 2011. The testimony of Booney Davidson, the victim, and two police officers detailed the following events.

On March 25, 2010, at approximately 5:25 p.m., Davidson was walking on a street in the City of East Orange, on his way home from work, when he was approached by a person he later identified as defendant. Defendant, who had been walking behind two or three other men, said to Davidson, "pops, give me your money." Thinking the remark was made in jest, Davidson replied, "you kidding[?]" Defendant then pushed Davidson against a wall and snatched $31 from Davidson's pants pocket. Defendant left the scene, and Davidson continued on his way home. When Davidson came upon a police officer, he reported the crime and described the men. A police dispatch about the robbery followed.

Not far from the site of the robbery, East Orange Police Detective Robert Wright observed four men, including defendant, generally fitting the description in the dispatch. Detective Wright and his partner detained the four men while another officer transported Davidson to the scene. On his arrival, Davidson identified defendant as the robber and cleared the

4

other men of having any involvement in the crime. Defendant was then placed under arrest. From defendant's left front pocket, the police recovered $31 in denominations that matched those stolen from Davidson. At headquarters, Davidson again identified defendant, this time from an array of eight photographs.

B.

After the State's presentation, the defense rested without calling any witnesses. In summation, defense counsel raised the defense of mistaken identification, but neither side requested an identification charge.

On the second day of trial, February 3 at 11:57 a.m., the jury began its deliberations. At 4:18 p.m., in the presence of counsel, the court acknowledged receipt of a note from the jury. The top of the note read: "Still undecided. What do we do now?" Below that message, the jury listed three questions: "How much time are we allotted tonight? Can a particular juror be excused from the case? And can we get an easel with a marker?"

The court told the jurors that they would adjourn for the evening and continue their deliberations in the morning. It also pledged to have an easel and marker available when they began their session. The court gave the following response to

the question whether "a particular juror [could] be excused from the case":

> Generally the answer is no. You have the 12, you've been randomly selected, 12 of you heard the case. You have to hear the case and decide the case.
>
> Now, if a Juror wishes to be excused, it has to be for a good reason, it can't be just because you're not getting along with all the other Jurors, that's not how it works. But if someone has a particular issue or wishes to be heard in regard to a particular issue, you can write us a note tomorrow morning. We'll certainly have the Juror come out separately and we'll hear the issue and we'll decide from there.
>
> In open court and so forth, the general answer is no, but we also have alternates [who] are here, in case somebody becomes ill or some other issues happen[] or someone has to leave. We have alternates and that's the reason. It has to be for a very particular reason, not just because you're not getting along and you don't want to be here any more.
>
> . . . .
>
> We'll see you tomorrow morning at 9:30.

The next day, February 4, Juror Number 2 did not report to the courtroom at 9:30 a.m., as required. The court had calls made to locate the juror. The court personally called the Hudson County Clerk's Office, which the juror listed as her place of employment. The court was advised that no one by the juror's name had a record of employment there. By 11:23 a.m.,

6

nearly two hours past reporting time, the court decided to replace Juror Number 2 with an alternate juror.

Earlier, defense counsel expressed concern that, perhaps, the juror was involved in an accident or an emergency. Shortly before the court's decision to proceed without Juror Number 2, defense counsel asked whether "it would be appropriate . . . to send a note into the Jury to try to find out if Juror number two was the one that they were referring in that note as the uncooperating Juror." The court decided against taking that approach and, over defense counsel's objection, proceeded with the substitution.

The court gave the following instruction to the newly constituted jury:

> As you can see, Juror number two is missing. We tried to locate the Juror, we could not locate the Juror. The reason we have alternates is for reasons such as this particular contingency.
>
> As you know, Juror number two is not here and was excused from the Jury, although I will issue the appropriate bench warrant to have her come and explain why she's not here. That's neither here nor there with regard to your consideration.
>
> . . . .
>
> Now the alternate Juror has been selected to take Juror number two's place. The reason that Juror number two was excused was entirely irrelevant to this case, it had nothing to do with that person's views on the case nor her relationship with other members of the

7

> deliberating Jury.  Please do not speculate on the reason why the Juror was excused.

After receiving instructions to begin anew its deliberations with the alternate juror, the jury retired to the jury room.  The jury deliberated for one hour and fifty minutes and then returned a verdict of guilty on the charge of second-degree robbery.

C.

Defendant moved for a new trial on the ground that the court erred in substituting an alternate juror for missing Juror Number 2.  The court denied that motion and stated its reasons for doing so.  The court determined that the note submitted by the jury -- "Still undecided.  Can a particular juror be excused from the case?" -- did not provide meaningful information from which any firm conclusions could be drawn.  The court rejected defendant's assumption that Juror Number 2 was deadlocking the jury.  The court observed that nothing in the record supported the assumption that "there was a single dissenting juror," that "the jury had already come to an agreement, but for the presence of that single juror," or that "Juror Number 2 . . . was the phantom dissenter."  The court also noted the complete absence of any evidence that Juror Number 2 possessed a bias or some other prejudicial disposition that tainted the deliberations.  Moreover, it emphasized that Juror Number 2 "was never dismissed

8

from service, but could not be located," thus distinguishing this case from prior juror-removal cases. Last, the court found that the deliberations had not progressed so far that substitution of an alternate was precluded.

D.

The court sentenced defendant on the robbery charge to a six-year prison term subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, and to a three-year period of supervised release after his release from custody. It also imposed all requisite fines and penalties.

E.

In an unpublished decision, the Appellate Division reversed defendant's conviction based on the court's failure to make any inquiry following the jury note, which asked "whether a 'particular juror could be excused from the case.'" The appellate panel remanded for a new trial and directed that "the [trial] court should charge the jury on identification since identification is a significant issue in this case."

The panel was satisfied that the trial court "made appropriate inquiries . . . to determine the juror's whereabouts" and "did not abuse its discretion in replacing the juror after nearly two hours had elapsed since the 9:30 a.m. reporting time." The panel, however, concluded that the trial court erred in failing to explore "whether the juror's failure

9

to return to court was for reasons personal to the juror or due to the juror's interaction with the jury." According to the panel, the receipt of the juror note should have prompted two responses from the court. First, upon receipt of the note, "the court should have sought further clarification from the jury why it was asking whether a particular juror could be excused." Second, after Juror Number 2 failed to appear the next morning, "the court should have questioned the remaining jurors in an effort to determine whether there was any connection between the previous day's question and Juror 2's non-appearance." The panel concluded that the court's failure to make those inquiries in an attempt to learn "why the juror had not returned" deprived the panel of the ability to carefully scrutinize the propriety of the juror substitution, thus requiring reversal.

We granted the State's petition for certification. State v. Musa, 217 N.J. 296 (2014). We also granted the motion of the Attorney General to participate as amicus curiae.

II.

A.

The State urges that defendant's conviction be reinstated. The State argues that the trial court properly substituted the alternate juror for Juror Number 2 without conducting an intrusive inquiry of the jury. According to the State, the

10

trial court appropriately responded to the jury's question about excusing a juror and only substituted an alternate after Juror Number 2 failed to report for service and could not be located. The State maintains that the Appellate Division's approach would have "required the trial judge to invade the jurors' deliberative process," revealing the "voting inclinations" of jurors and thus compromising the sanctity of their deliberations. It claims, moreover, that nothing in the record suggested that "the jury's deliberations had progressed to the point where substitution of a juror would have been futile." In short, the State submits that, in applying Rule 1:8-2(d)(1), the trial court appropriately balanced the twin goals of the right to a fair trial and judicial economy.

## B.

The Attorney General, as amicus, contends that in the absence of an "indication of any specific jury irregularity," the trial court had no obligation to question jurors about "whether Juror Two's disappearance had anything to do with jury deliberations." The Attorney General expresses concern that the questioning required by the Appellate Division could have potentially revealed "information about the substance of the jury's deliberations, jeopardizing the integrity of the entire proceeding." The Attorney General maintains that the "trial court took appropriate steps to locate the missing juror" and,

11

when that failed, "properly replaced the juror with an alternate juror."

## C.

Defendant claims that the trial judge failed to protect his right to a fair and impartial jury by choosing "not to question the jury before seating an alternate juror after one juror went missing." Defendant submits that the jury's question -- "'Can a particular juror be excused from the case?'" -- "suggest[ed] that something unusual and troubling [was] going on in the jury room." In defendant's view, the jury question "indicate[d] either that a particular juror want[ed] to be excused, or that the other 11 jurors want[ed] to get rid of the twelfth, or, possibly, both." From that premise, defendant argues that "the judge should have made an effort to ensure that whatever caused the jury to ask about getting rid of a deliberating juror had not affected its ability to reach an impartial verdict." Defendant complains that the "judge denied even counsel's modest request that, before seating an alternate, he at least try to find out if the absent juror was the subject of the previous day's note." Defendant states that the judge first had "to determine whether the juror must be dismissed." Defendant claims that no reported case in this jurisdiction treats a juror's unexplained absence as an "inability to continue" under Rule 1:8-2(d)(1) and therefore as a basis for juror removal.

12

According to defendant, "the trial judge failed in his duty to ensure that deliberations were not tainted by whatever had driven the jury to ask about getting rid of a juror." For those reasons, defendant urges that we affirm the Appellate Division's reversal of his conviction.

III.

A.

Our review of a trial court's decision to remove and substitute a deliberating juror because of an "inability to continue," pursuant to Rule 1:8-2(d)(1), is deferential. We will not reverse a conviction unless the court has abused its discretion. State v. Williams, 171 N.J. 151, 168, 170 (2002); State v. Valenzuela, 136 N.J. 458, 473 (1994). An appellate court's review of "a trial court's denial of a mistrial motion" is also governed by the abuse-of-discretion standard. State v. Yough, 208 N.J. 385, 397 (2011) (stating that "grant of a mistrial is an extraordinary remedy").

The deference that must be accorded to trial court fact-findings in this setting must guide our analysis of whether the Appellate Division erred in reversing defendant's conviction.

B.

Rule 1:8-2(d)(1) provides that, after the jury begins its deliberations, an alternate juror may not be substituted unless "a juror dies or is discharged by the court because of illness

13

or other inability to continue."[1]  Rule 1:8-2(d)(1) is intended to strike a balance between a defendant's right to a fair trial decided by an impartial jury and judicial economy.  State v. Jenkins, 182 N.J. 112, 124 (2004).  "Declaring a mistrial imposes enormous costs on our judicial system, from the expenditure of precious resources in a retrial to the continued disruption in the lives of witnesses and parties seeking closure."  Ibid.  Nevertheless, a juror may not be replaced if to do so would "pose a threat to the integrity or independence of the deliberative process."  Ibid.

Clearly, replacing an ill or deceased juror with an alternate juror will not pose such a threat.  Ibid.  However, the removal of a juror because he is disputatious and does not share the views of other jurors would undermine the very essence

---

[1] Rule 1:8-2(d)(1) provides:

> If the alternate jurors are not discharged and if at any time after submission of the case to the jury, a juror dies or is discharged by the court because of illness or other inability to continue, the court may direct the clerk to draw the name of an alternate juror to take the place of the juror who is deceased or discharged.  When such a substitution of an alternate juror is made, the court shall instruct the jury to recommence deliberations and shall give the jury such other supplemental instructions as may be appropriate.
>
> [R. 1:8-2(d)(1) (emphasis added).]

14

of the free and open debate that is expected of jury deliberations. Ibid. Although jurors are urged to attempt to reach consensus, discord, not just assent, is a natural part of the deliberative process. A court may not play any role in jiggering a jury panel's composition for the purpose of imposing conformity.

Illness and death are neutral categories allowing for the substitution of an alternate juror. On the other hand, removal of a juror for "other inability to continue" is open to varying interpretations. For that reason, "[w]e have restrictively interpreted the phrase 'inability to continue' in Rule 1:8-2(d)(1) to . . . forbid[] juror substitution when a deliberating juror's removal is in any way related to the deliberative process." Ibid. "A deliberating juror may not be discharged and replaced with an alternate unless the record 'adequately establishes that the juror suffers from an inability to function that is personal and unrelated to the juror's interaction with the other jury members.'" Id. at 124-25 (quoting State v. Hightower, 146 N.J. 239, 254 (1996)); see also Valenzuela, supra, 136 N.J. at 468 ("The 'unable to continue' language . . . [applies] to compelling circumstances which are exclusively personal to the juror in question, and hence which do not and which by their nature cannot raise the specter of either a jury

15

taint or substantive interference with the ultimate course of the deliberations." (internal quotation marks omitted)).

Our courts have sanctioned the removal of a deliberating juror for "inability to continue" when the juror has "expressed refusal to abide by her sworn oath to follow the law," Jenkins, supra, 182 N.J. at 130, complained of financial hardship, Williams, supra, 171 N.J. at 167, stated that his nervous and emotional condition "affect[ed] his judgment" and ability to render a fair verdict, State v. Miller, 76 N.J. 392, 401, 406-07 (1978), and "disregarded the court's unambiguous admonitions" and had a "conversation with a relative [that] patently influenced [her]," State v. Holloway, 288 N.J. Super. 390, 404 (App. Div. 1996). In those examples, the removal is for reasons personal to the juror and not for reasons relating to the interchange between jurors or the deliberative process.

Substituting an alternate juror for a deliberating juror who fails to report for service is permissible for the same reason that substitution is allowed under Rule 1:8-2(d)(1) for illness and death. In all three scenarios, there is no potential for the rigging of a jury. When a deliberating juror fails to report for service at the courthouse, the juror in effect has removed herself from the panel. In that event, the court's decision is rather limited, whether to replace the missing juror with an alternate or declare a mistrial. Common

16

sense suggests that an absent juror fits into the category of "inability to continue" because a juror who is not present in the jury room is unable to participate in any way -- as an assenter, dissenter, or passive listener -- in the deliberations.

A court does not have to indefinitely postpone a trial when a deliberating juror fails to return to the courthouse to resume her service. The court does not have to cede to the absent juror control over the fate of the trial. After waiting a reasonable interval and making inquiries to locate the missing juror, the court has the discretion to proceed with the trial and substitute an alternate juror on the panel. See, e.g., State v. Guytan, 968 P.2d 587, 590, 594 (Ariz. Ct. App. 1998) (concluding that trial court did not err in substituting juror who failed to appear for second day of deliberations without engaging in inquiry); Commonwealth v. Robinson, 864 N.E.2d 1186, 1192-93 (Mass. 2007) (stating that "strong likelihood of unreasonable delay from waiting for" juror who failed to appear on third day of deliberations because of child-care issues justified use of alternate juror (internal quotation marks omitted)); cf. United States v. Peters, 617 F.2d 503, 505 (7th Cir. 1980) (stating that "it is difficult to imagine a more complete disqualification than a [juror's] failure to appear" during trial).

17

We must also keep in mind that "there are times when jury deliberations have proceeded too far to permit replacement of a deliberating juror with an alternate." Jenkins, supra, 182 N.J. at 131. That critical threshold is passed when "it is strongly inferable that the [remaining jurors have] made actual fact-findings or reached determinations of guilt or innocence [and] there is a concern that the new juror will not play a meaningful role in deliberations." Id. at 132 (internal quotation marks omitted). Thus, a court must assess whether "in light of the timing of the juror's dismissal and other relevant considerations . . . a reconstituted jury will be in a position to conduct open-minded and fair deliberations." State v. Ross, 218 N.J. 130, 147 (2014).

C.

Any inquiry to determine whether a deliberating juror should be removed and replaced with an alternate must be carefully circumscribed to "protect the confidentiality of jury communications." Ibid. We have stressed that, in questioning a juror or jurors, a court must diligently avoid "the inadvertent disclosure of confidential information by a juror." Jenkins, supra, 182 N.J. at 134. "[M]aintaining the secrecy of jury deliberations for the purpose of encouraging free and vigorous discourse in the jury room" is of paramount importance. Ibid. We have warned that "[t]he premature revelation of jurors'

18

voting inclinations could damage the deliberative process and improperly influence the decisions that must be made by both counsel and the court." Ibid. Accordingly, the court "must caution a juror at the outset of the colloquy that she must not reveal the way in which any juror plans to vote, or the vote tally on a verdict." Ibid.; see, e.g., State v. Singleton, 290 N.J. Super. 336, 345 (App. Div. 1996) (observing that court, during colloquy with juror, stated, "I don't want you to tell me what you're thinking or what the other jurors are thinking").

Generally, if a court inquires of a juror on the subject of "inability to continue," the questions must be carefully crafted to elicit answers that only bear on reasons personal to the juror and that in no way elicit the drift of the deliberations or voting inclinations of any juror. For example, in Ross, supra, when the trial court received a note from the jury that a juror was "sick" and did not expect to return the next day, the court questioned the juror about the illness -- not about the jury's deliberations. 218 N.J. at 139. When the juror informed the court the following day that she was still ill, the court dismissed the juror. Ibid. In Williams, supra, when the court received a note that one juror could not attend the next day of deliberations, the questioning of the juror focused on the specific personal grounds giving rise to the problem -- the

19

financial hardship caused by continued service.  171 N.J. at 159.

The point is that, in deciding whether those jurors were able to continue on the jury panel, the questioning was limited to assessing circumstances personal to the jurors and not delving into the deliberative process.  We do not suggest that there is an inflexible rule that applies to the myriad scenarios that may call for judicial inquiry of a jury, including scenarios involving the introduction of taint into the jury room.  Suffice it to say that inquiry into the deliberative process -- delving into the thoughts and views of jurors -- is forbidden.

                              IV.

The issue before us is whether the trial court abused its discretion in substituting an alternate juror for Juror Number 2 after she did not report for service on the second day of jury deliberations.  In addressing that issue, we begin by reviewing the jury's note at the end of the first day of deliberations.

The note informed the court that the jury, which had been deliberating for several hours, was "undecided" at that point. The note also contained three questions.  Two of those questions -- "How much time are we allotted tonight?" and "[C]an we get an easel with a marker?" -- clearly indicate that the jury was not deadlocked and was prepared to engage in further deliberations.

The third question asked, "Can a particular juror be excused from the case?" The court gave an appropriate response, stating, "Generally the answer is no." The court explained that "if a juror wishes to be excused, it has to be for a good reason," and that a juror cannot be excused for "not getting along with all the other jurors." The court also pointed out that alternate jurors were available "in case somebody becomes ill . . . or someone has to leave." The court emphasized, however, that an excusal had to be based on "a very particular reason, not because you're not getting along and you don't want to be here any more." Any juror wishing to be heard was invited to raise the matter the next morning.

We do not know whether the question was provoked because of a juror's illness, need to attend to a sick relative or child-care responsibilities, financial hardship due to absence from work, discord with other jurors, or some other reason. Defendant's supposition that the note indicated "something unusual and troubling [was] going on in the jury room" is nothing more than speculation. The court did not turn a blind eye to the jury question, but was willing to hear from any juror the following day. None came forward.

We do not know whether Juror Number 2, who did not appear for the second day's deliberations, was the same juror referred to in the note. But even were we to engage in the unwarranted

21

assumption that Juror Number 2 was the subject of the note, she had no right to purposely absent herself from jury service without permission of the court -- whatever the reason. Of course, we cannot discount the possibility that the juror was kept from returning for reasons entirely beyond her control, such as an accident. No one suggests that an alternate cannot replace a juror who is involuntarily disabled from returning for service.

Even if hypothetically the juror's unexpressed reason for not returning were due to a difference of view with other jurors, that alone would not necessarily precipitate a mistrial. A single juror cannot nullify jury deliberations -- and the entire trial process -- by refusing to be physically present in the jury room. Although no juror can be compelled to vote against her wishes in the jury room, presence there is a precondition for the ability to continue to serve. This unlikely scenario should not present a real-life problem because the court should remain unaware of a deliberating juror's views on guilt or innocence.

The Appellate Division claimed that the court fatally erred by not questioning "the remaining jurors in an effort to determine whether there was any connection between the previous day's question and Juror 2's non-appearance." However, the appellate panel did not propose a question that would have

22

yielded relevant information on the issue of whether to proceed with an alternate juror. Defendant maintains that the judge could have asked: "Without revealing anything about deliberations, can you tell me why you are inquiring about excusing a juror?" But even a "no" answer to that open-ended question would have intimated a problem related to the deliberations.

We do not suggest that, without in any way intruding into the deliberative process, a narrow line of questions could not have been posed to the jury to attempt to learn some personal reason for Juror Number 2's non-appearance, particularly given that the trial court was inclined to issue a bench warrant for her arrest. For instance, the jurors could have been asked -- after receiving a strict admonition that any answer could not reveal where any juror stood in the deliberations -- whether they knew of some specific personal reason that kept Juror Number 2 from returning for service, such as an illness or the need to meet a family emergency. But whatever the answer might have been, the court likely would not have been restrained from substituting an alternate. A court is not required to postpone a trial for an indefinite period because a deliberating juror has not returned for service. See Guytan, supra, 968 P.2d at 590, 594; Robinson, supra, 864 N.E.2d at 1192-93. The court made an alternate substitution approximately two hours after

23

Juror Number 2's failure to appear and after all efforts to contact her were unsuccessful. Moreover, the record does not indicate that Juror Number 2 appeared at any time on the second day of deliberations.

In the end, although some limited form of questioning might have been reasonable, we cannot conclude that the decision not to pursue an inquiry in this delicate area constituted an abuse of discretion warranting a mistrial. Questioning, if not properly narrowed, had the potential to impermissibly infringe on the jury's deliberative process.

In summary, Juror Number 2's failure to appear for the second day of deliberations amounted to an "inability to continue" under Rule 1:8-2(d)(1). The deliberations, moreover, had not proceeded to a point where juror substitution was not allowed. Defense counsel conceded this point at oral argument. The jurors had deliberated for only one afternoon, had not reached a decision, and requested an easel and marker to assist in their continued discussions. Nothing in the record suggests that jurors had so solidified their views that "a reconstituted jury" was not capable of conducting "open-minded and fair deliberations." See Ross, supra, 218 N.J. at 147. Accordingly, substituting an alternate juror for the missing juror was

permissible.[2]

V.

For the reasons explained, we reverse the judgment of the Appellate Division and reinstate defendant's conviction for second-degree robbery. We remand to the Appellate Division to address the issue it did not reach: whether the trial court's failure to give an identification charge denied defendant a fair trial. We express no opinion on that subject.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN's opinion. JUSTICE FERNANDEZ-VINA did not participate.

---

[2] We make this final observation. Before the court issued a bench warrant for Juror Number 2's arrest, the better course would have been to wait more than two hours to ensure that her non-appearance was willful and contumacious. Additionally, the court should not have advised the remaining jurors that a bench warrant was issued for her arrest. That information was wholly irrelevant to the task before the jury.

SUPREME COURT OF NEW JERSEY

NO.    A-78                          SEPTEMBER TERM 2013

ON CERTIFICATION TO      Appellate Division, Superior Court


STATE OF NEW JERSEY,

        Plaintiff-Appellant,

                v.

HUMFREY A. MUSA,

        Defendant-Respondent.


DECIDED            August 18, 2015
                Chief Justice Rabner              PRESIDING
OPINION BY        Justice Albin
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE/ REINSTATE/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | -------------------- | -------------------- |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |