**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3828-15T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ISAIAH J. KNIGHT,
a/k/a CARL MCMILLAN,
ISIAH ANDERSON, and
ISIAH REED,

     Defendant-Appellant.

_____

Submitted May 4, 2020 – Decided July 17, 2020

Before Judges Vernoia and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 11-04-0385.

Joseph E. Krakora, Public Defender, attorney for appellant (John A. Albright, Designated Counsel, on the brief).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, Isaiah Knight, appeals from his trial convictions for eluding, aggravated assault, and related offenses stemming from a high-speed car chase and collision. Superstorm Sandy interrupted the jury's deliberations. Defendant contends the trial court erred in denying his motion for a mistrial, claiming it was improper to allow the jury to resume deliberations in the aftermath of the storm. He also contends the trial judge erred in reconstituting the jury when one of the juror's failed to return. After reviewing the record in light of the applicable legal principles, we reject defendant's contentions and affirm his convictions.

I.

Defendant was charged with: (1) second-degree eluding, in violation of N.J.S.A. 2C:29-2(b); (2) third-degree aggravated assault, in violation of N.J.S.A. 2C:12-1(b)(2); (3) second-degree aggravated assault, in violation of N.J.S.A. 2C:12-1(b)(6); (4) third-degree resisting arrest, in violation of N.J.S.A. 2C:29-2(a); (5) third-degree hindering apprehension, in violation of N.J.S.A. 2C:29-3(b)(4); and third-degree possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C39-4(d). The indictment also charged a co-

2

defendant, Terry Saunders, who was a passenger in the vehicle driven by defendant.[1]

Defendant and co-defendant Saunders were tried together before a jury beginning on October 16, 2012. After the jury had begun deliberations, Superstorm Sandy struck New Jersey while the trial was in recess for the weekend. When the trial resumed on November 1, 2012, defendant moved for a mistrial because of the storm. Judge William A. Daniel denied the motion.

One of the jurors failed to return after the storm. The judge replaced the missing juror with an alternate and instructed the jury to start over in its deliberations. Later that day, the jury found defendant guilty of second-degree eluding, second-degree aggravated assault, third-degree resisting arrest, and third-degree hindering apprehension. The jury acquitted defendant of the remaining counts.

Defendant thereafter moved for a new trial. That motion was not heard, however, because defendant was determined to be incompetent. The competency finding delayed sentencing for more than three years. After eventually declaring defendant competent, Judge Daniel imposed an aggregate

---

[1] Co-defendant Saunders is not a party in this appeal.

 A-3828-15T3

eight-year term of imprisonment subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant filed a timely notice of appeal. After we remanded the matter for the trial court to reconstruct the record, Judge Daniel advised us by letter that defendant's motion for a new trial had been timely filed but never decided. Thereafter, we remanded the matter for the trial court to decide the outstanding motion. Judge Daniel subsequently denied the motion for a new trial. This appeal follows.

II.

Defendant presents the following contentions for our consideration:

> POINT I
>
> DEFENDANT'S MOTION FOR A MISTRIAL SHOULD HAVE BEEN GRANTED BECAUSE THE RECONSTITUTION OF THE JURY WAS IMPROPER; THE SUBSTITUTION OF AN ALTERNATE FOR A JUROR THAT DISAPPEARED AFTER HURRICANE SANDY WAS UNSUPPORTED BY ANY INQUIRY OF THE JUROR ON THE RECORD, THREATENED THE INTEGRITY AND MUTUALITY OF DELIBERATIONS, AND THEREFORE, DEPRIVED DEFENDANT OF A FAIR TRIAL.
>
> POINT II
>
> DEFENDANT'S MOTION FOR A NEW TRIAL SHOULD HAVE BEEN GRANTED FOR SIMILAR

4

REASONS; BEFORE HURRICANE SANDY THE JURY REQUESTED A LENGTHY READBACK OF TESTIMONY, AND AFTER THE JURY WAS IMPROPERLY RECONSTITUTED IT ABANDONED THAT REQUEST AND DELIBERATED FOR ONLY TWO HOURS AND FOUR MINUTES BEFORE REACHING A GUILTY VERDICT.

## III.

### A.

In view of the legal issues raised on appeal, we need only briefly summarize the evidence the State adduced at trial. On December 12, 2010, defendant was driving in the City of Elizabeth when police officers directed him to pull over for a traffic violation. Defendant instead accelerated to seventy-five miles per hour in a posted thirty-five-mile-per hour zone. The vehicle sped through multiple red lights and stop signs and, at times, was travelling the wrong way on a divided roadway.

Several police cars joined in the pursuit, converging from different directions. At one point, defendant swerved directly at an approaching police vehicle, forcing it to take evasive action to avoid collision. At another point in the course of the pursuit, a police vehicle driven by Officer Kevin Florczak came with five feet of the fleeing vehicle at a well-lit intersection. Officer Florczak was able to observe the driver and passenger. The officer discerned that the

5

driver was wearing a grey sweatshirt, had long dreadlocks, and a thinner face. The passenger was wearing a teal sweatshirt, had dreadlocks, facial hair, and a fuller face.

The high-speed chase finally ended when the fleeing vehicle crossed over into oncoming traffic at an intersection and collided with a civilian vehicle, which was occupied by two persons. Both victims sustained serious injuries in the crash.

The car driven by defendant was disabled as a result of the collision. Defendant and co-defendant Saunders exited from the passenger side and fled on foot. Defendant fled north on Summit Avenue while Saunders ran in a different direction behind a residence. Officer Florczak and another officer chased defendant on Summit Avenue. Defendant escaped immediate apprehension by jumping over a fence.

Approximately fifteen minutes later, the Hillside Police Department notified the Elizabeth officers that a male matching the description of the driver had been apprehended several blocks from the officers' location. Officer Florczak proceeded to the Hillside location and confirmed that the person detained was the driver of the fleeing vehicle. Officer Florzack identified defendant in court as the driver.

B.

In view of defendant's contentions with respect to the jury's deliberations, we recount in detail the circumstances that occurred after the case was initially submitted to the jury. Following three days of testimony, the jury began deliberations on October 25, 2012, at approximately 2:30 p.m. The court excused the jury at 3:45 p.m. after the jury requested additional copies of the jury instructions.

The following day, Friday, October 26, 2012, one of the jurors failed to appear. With the consent of both defense counsel and the prosecutor, the court substituted an alternate juror and instructed the jury to begin deliberations anew.

At 2:35 p.m., the jury requested playback of the testimony of two police officers, as well as dashcam video of the crash. The trial judge determined that it would take approximately three hours to play back the requested testimony and video recording. That would have kept the jury past normal court hours. Accordingly, the judge dismissed the jury for the weekend and ordered them to return on Monday, October 29, 2012. Taking into account the one-hour lunch break and a twenty-minute rest break, the first reconstituted jury had deliberated for approximately four hours and forty minutes before it was dismissed for the weekend.

On Saturday, October 27, 2012, Superstorm Sandy struck New Jersey. As a result of the storm, the courthouse remained closed until Thursday, November 1. When the trial court recalled the jury on November 1, two jurors (jurors numbers eight and nine) did not arrive on time, preventing the jury from resuming its deliberations. The court dismissed the jurors for lunch at 11:25 a.m. and directed them to return in thirty minutes.

By the time the jurors returned from the lunch recess, juror number nine had arrived at the courthouse with the assistance of the Sherriff's department.[2] Juror number eight, however, remained absent. Court staff made efforts to call the missing juror but were only able to leave voicemail messages. The juror did not respond to the messages, and it was never determined why he did not return for deliberations.

Judge Daniel asked counsel whether they would consent to substitute the remaining alternate juror to replace juror number eight. Defense counsel at this point moved for a mistrial on the grounds that the storm had such a profound

---

[2] The record shows that juror number nine failed to appear on time due to lack of transportation as a result of the storm. The Sherriff's department arranged to transport her to the courthouse.

impact on the lives of the jurors that they could not fully focus on deliberations and render a fair verdict.[3]

In view of the concerns expressed by defense counsel, Judge Daniel questioned each juror individually. The judge asked each juror if "there [was] anything . . . which would affect [his/her] ability to a be a fair or impartial juror or in any way be a problem for [him/her] in serving on" the jury. Each juror told the court that there was nothing that would interfere with his or her ability to render a fair and impartial verdict.

Judge Daniel denied defendant's motion for a mistrial, finding there was nothing "that would prevent or impede this jury from adhering to the instructions" the court gave them. The judge thereupon substituted the alternate juror for the absent juror. The judge explained to the jury that juror number eight was absent due to the storm and not for any reason pertaining to his views of the case or his relationship with the other jurors. The court instructed the newly reconstituted jury to begin deliberations anew.

---

[3] We note that counsel's argument for a mistrial focused solely on the potential impact of Superstorm Sandy on the jury's deliberations. Defense counsel explained that while he had "an objection to everything going forward," he did not "have a specific objection" to "having one juror come in to replace the other." Moreover, counsel advised the court that "had [the substitution] taken place on Monday morning, [the originally scheduled time for the resumption of deliberations], [counsel] would have just said, I consent."

A-3828-15T3

The judge explained that because the jury was restarting its deliberations, the slate had been wiped clean and that any request for playback of testimony or video evidence would have to be restated by the reconstituted jury. The reconstituted jury did not renew a request for a playback of testimony or the video of the crash. At 2:40 p.m., after approximately two hours of deliberation, the jury advised the court they had reached a verdict.

IV.

We begin our analysis by acknowledging certain legal principles that apply in this case. A mistrial is a severe remedy that should be granted sparingly due to the substantial costs it imposes on the judicial system. State v. Jenkins, 182 N.J. 112, 124 (2004). A trial court should grant a mistrial only when necessary "to prevent an obvious failure of justice." State v. Harvey, 151 N.J. 117, 205 (1997) (citing State v. Rechtschaffer, 70 N.J. 395, 406 (1976)). In assessing the risk of an obvious failure of justice, the trial court "must consider the unique circumstances of the case." State v. Smith, 224 N.J. 36, 47 (2016) (citations omitted). If an alternative course of action presents a viable alternative to a mistrial, the court should pursue that option and forego terminating trial proceedings. Ibid. (citing State v. Allah, 170 N.J. 269, 281 (2002)).

10

We defer to a trial court's judgment on whether to declare a mistrial. "Whether an event at trial justifies a mistrial is a decision 'entrusted to the sound discretion of the trial court.'" Smith, 224 N.J. at 47 (citations omitted). We therefore will not disturb the trial court's determination except upon a showing that the court abused its discretion, resulting in a manifest injustice. Ibid. (citing State v. Jackson, 211 N.J. 394, 407 (2012)). As a general matter, an abuse of discretion is apparent when the trial court fails to consider all relevant evidence or makes a clear error in judgment. See State v. Baynes, 148 N.J. 434, 444 (1997) (discussing the abuse of discretion standard as applied to a prosecutor's veto of a defendant's PTI application (citing State v. Bender, 80 N.J. 84, 93 (1979))).

We also afford deference to the trial court's decision whether to substitute an alternate juror pursuant to Rule 1:8-2. State v. Musa, 222 N.J. 554, 564–65 (2015). We will not reverse the court's ruling absent an abuse of discretion. Id. at 565 (citations omitted). Rule 1:8-2(d)(1) provides that the court may not substitute an alternate juror unless "a juror dies or is discharged by the court because of illness or other inability to continue." The rule and case law direct the trial court to focus on two related issues. First, the court must determine the cause of the juror's inability to continue deliberations. See State v. Ross, 218

11

N.J. 130, 147 (2014) (directing trial courts to "determine the cause of the juror's concern" that establishes their inability to continue deliberating). Second, the court must decide whether "jury deliberations have proceeded too far to permit replacement of a deliberating juror with an alternate." Jenkins, 182 N.J. at 131. Given the risk that reconstituting the jury "can destroy the mutuality of . . . deliberations," State v. Williams, 171 N.J. 151, 163 (2002) (citing State v. Corsaro, 107 N.J. 339, 349 (1987)), we have cautioned that juror substitution "should be invoked only as a last resort," State v. Hightower, 146 N.J. 239, 254 (1996) (citing State v. Lipsky, 164 N.J. Super. 39, 43 (App. Div. 1978)).

The first requirement for juror substitution is that the juror must be unable to continue deliberations. R. 1:8-2(d)(1). There are limits on what constitutes a permissible reason for a juror's inability to continue deliberating under the rule. Generally, "our courts distinguish between reasons personal to the juror, which may permit a substitution under Rule 1:8-2(d)(1), and issues derived from 'the juror's interaction with the other jurors or the case itself,' which may not." Ross, 218 N.J. at 147 (quoting Williams, 171 N.J. at 163). While there are many examples of what constitutes a reason for removal personal to the juror, see Musa, 222 N.J. at 566–67 (reviewing permissible reasons for removing a juror), the trial court normally must undertake some inquiry with the juror seeking

12

removal in order to assure that substitution is permissible, see Ross, 218 N.J. at 147 (directing trial courts to "determine the cause of the juror's concern").

Finally, with respect to the foundational principles of law governing this appeal, we note that pursuant to Rule 3:20-1, a judge may grant a motion for a new trial if required in the interest of justice. We review the trial court's decision on a motion for a new trial under a deferential standard. We will not interfere with the trial court's ruling unless the court has abused its discretion. State v. Brooks, 366 N.J. Super. 447, 454 (App. Div. 2004) (citing State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000)). Our review is limited, moreover, to a determination "whether the findings made [by the trial court] could reasonably have been reached on sufficient credible evidence present in the record." Russo, 333 N.J. Super. at 140 (alteration in original) (citations omitted).

V.

We first address defendant's contention that the trial court erred in denying his motion for a new trial on the grounds that the effect of the storm pressured the jury to rush to judgment so that they could return to their homes and families. We do not disagree with defendant that the widespread damage wrought by Superstorm Sandy presented a unique challenge to the jury's ability to render a fair verdict. The record clearly shows, however, that the trial court carefully

13

considered the potential impact of the storm and its aftermath and took steps to make certain the jury was able to render a fair verdict. This was not a situation, in other words, where the court abused its discretion by ignoring the risk of a failure of justice posited by defense counsel. Harvey, 151 N.J. at 205 (citations omitted).

Specifically, after the storm, the judge questioned each juror individually to determine whether there was anything that would affect their ability to serve on the jury. All twelve jurors, including the juror that had suffered transportation problems as a result of Superstorm Sandy, told the court that nothing would interfere with their respective abilities to deliberate fairly and impartially.

We believe the trial court pursued a reasonable alternative to declaring a mistrial by questioning each juror. Smith, 224 N.J. at 47 (citing Allah, 170 N.J. at 281). The jurors' answers amply support the judge's finding that there was nothing that would prevent them from rendering a fair and impartial verdict. We thus conclude that the trial judge did not abuse his discretion in denying defendant's mistrial motion.

## VI.

We turn next to defendant's contention, raised for the first time on appeal, see supra note 3, that the trial court abused its discretion by replacing the juror who failed to return after the storm. Defendant argues: (1) the trial court failed to inquire why juror number eight failed to return, and (2) the circumstances provided a strong inference that the jury had decided factual issues, and thus was unable to begin deliberating anew. We reject both arguments and conclude the trial judge did not abuse his discretion in reconstituting the jury a second time.

## A.

We first note that defendant's argument that the court failed to engage in the requisite fact-finding and analysis is undermined by his own failure to raise the issue of juror substitution to the court. Counsel did not argue that the efforts that had been undertaken by court staff to locate the missing juror were inadequate. Nor did counsel suggest what additional efforts should have been undertaken to find the missing juror so that he could be questioned as to the reason for his nonappearance. We deem it to be mere speculation that juror number eight failed to appear because of his view of the case or his relationship with the other jurors, rather than for a personal reason.

A-3828-15T3

In Musa, our Supreme Court addressed whether a juror's failure to report for service constitutes a personal reason establishing an inability to continue deliberations.  222 N.J. at 566–67.  The Court explained that substituting an alternate juror for a deliberating juror who fails to report for deliberations is clearly permissible under Rule 1:8-2(d)(1).  Id. at 567.  The Court reasoned that by removing himself from the panel, the absent juror had rendered himself unable to continue deliberating in any manner.  Ibid. (noting, "[c]ommon sense suggests that an absent juror fits into the category of 'inability to continue' . . . in the deliberations").

The Court in Musa also expounded on the inquiry a trial court must make into a deliberating juror's absence before substituting an alternate juror and proceeding with trial.  The Court made clear a trial court is not required "to indefinitely postpone a trial when a deliberating juror fails" to report.  Ibid.  To do so, the Court noted, would cede to the absent juror control over the outcome of the trial.  Ibid.  Instead, the trial court need only "wait[] a reasonable interval and mak[e] inquiries to locate the missing juror," after which the court would act within its discretion by substituting an alternate juror onto the panel.  Ibid.  In that case, the Court found the trial court did not abuse its discretion by

16

substituting an alternate juror at 11:23 a.m. when the deliberating juror had failed to report to the courtroom at 9:30 a.m. Id. at 560, 572.

Applying the principles established in Musa, we conclude the trial court acted within its discretion by substituting an alternate juror for juror number eight. We believe Judge Daniel made the necessary inquiry into the reason for juror number eight's absence by having court staff place calls to the missing juror's phone, leaving him voice mails, and by waiting until noontime to substitute an alternate juror. Moreover, there is nothing in the record before us to suggest that juror number eight was absent due to a conflict with other jurors or his views on the case.[4] Accordingly, the trial court did not abuse its discretion with respect to the efforts made to find and question the missing juror.

## B.

We turn next to defendant's contention that the first reconstituted jury had proceeded too far in its deliberations to permit replacement of a deliberating juror with an alternate. The point at which a court should not substitute a juror arises "when the circumstances suggest a strong inference that the jury has

---

[4] We add that even if we were to entertain speculation concerning the cause of juror number eight's absence, Musa makes clear that "a difference of view with other jurors . . . alone would not necessarily precipitate a mistrial" because a juror's physical presence in court is a precondition for serving on a jury. Id. at 571.

affirmatively reached a determination on one or more factual or legal issues." Ross, 218 N.J. at 151. "In such a situation, it [becomes] unlikely that the new juror will have a fair opportunity to express his or her views and to persuade others . . . [or] to understand and share completely in the deliberations that brought the jurors to particular determinations." Corsaro, 107 N.J. at 352. Rather than substitute an alternate juror, the preferred course in these circumstances is for the trial court to declare a mistrial. Ross, 218 N.J. at 151.

The clearest expression that the jury has decided legal and factual issues is the jury's rendering of a partial verdict. Once a partial verdict has been returned, substitution is clearly impermissible. State v. Horton, ___ N.J. ___, ___ (2020) (slip op. at 3). In the absence of a partial verdict, the court must attempt to infer whether the jury has reached ultimate determinations on any legal or factual issues. The inferential assessment of whether the jury is incapable of restarting deliberations depends on the timing of the juror's dismissal and any other relevant circumstances. Ross, 218 N.J. at 147. Generally, "[t]he longer the period of time the jury deliberates, the greater is the possibility of prejudice should a juror be substituted or replaced." State v. Miller, 76 N.J. 392, 407 (1978). Still, there is no inflexible rule that some

18

amount of days or hours spent in deliberations precludes a court from substituting a juror. Ross, 218 N.J. at 151.

We conclude that in this instance, the four hours and forty minutes the first reconstituted jury deliberated is not so long a period as to support a strong inference that the jury had decided one or more issues. In reaching this conclusion, we are guided by precedents that permitted jurors to be replaced after considerably longer periods of deliberation. In Ross, for example, the Court held the trial court did not commit plain error by substituting a juror after more than four days of deliberations. Id. at 139, 152. In Terrell, we concluded that a total of eight hours of deliberations spread over three days did not indicate that a reformulated jury could not restart deliberations. State v. Terrell, 452 N.J. Super. 226, 270, 275 (App. Div. 2016).

We appreciate that in this instance, the jury was reconstituted twice to replace a missing juror on two separate occasions. We do not believe the time the original jury spent deliberating—one hour, fifteen minutes—should be considered in determining whether the first reconstituted jury had gone too far to permit another substitution.[5] But even if we were to consider the period of

---

[5] We note that defendant does not challenge the substitution of the first juror who failed to return for service, juror number nine. Indeed, counsel expressly

time the originally selected jury deliberated, we do not believe the circumstances reasonably suggest the jury made fact-findings or reached determinations of guilt or innocence before they advised the court that they had reached a verdict.

We add that the time spent deliberating is not the only relevant circumstance militating against defendant's contention. In <u>Williams</u>, the Court cited the jury's request for a readback of testimony focusing on the critical issue of identification as evidence that "the jury had not resolved that critical issue." 171 N.J. at 168; <u>see also</u> <u>Terrell</u>, 452 N.J. Super. at 275 (relying on the jury's requests to review evidence and readbacks of testimony as proof the jury had not decided any factual issues). In the matter before us, the first reconstituted jury's request for a playback of testimony and video evidence just before they were dismissed for the weekend strongly suggests the jury was still considering factual issues in this case, including the identity of the driver of the fleeing vehicle.

---

consented to that substitution. We believe that when the court substituted the first missing juror and instructed the reconstituted jury to begin deliberations anew, the court wiped the slate clean for all purposes. Accordingly, the calculation of the amount of time the jury spent deliberating before juror number eight was replaced should not include the time that the original jury deliberated.

Considering the totality of the circumstances, we conclude the trial court did not abuse its discretion in deciding to replace juror number eight with the last alternate juror, and certainly did not commit plain error in doing so.

## VII.

Finally, we turn to defendant's contention the trial court erred in denying his motion for new trial. We note that this contention rests substantially on the same factual grounds as defendant's argument that the trial court erred in substituting an alternate for juror number eight. Defendant adds two additional circumstances for our consideration: (1) the second reconstituted jury deliberated for only slightly more than two hours before returning a verdict; and (2) the second reconstituted jury, unlike the one it replaced, did not request a playback of testimony or video evidence.

Defendant argues that these additional facts, when viewed in conjunction with the circumstances presented in his first point, support an inference that the alternate juror did not play a meaningful role in the deliberations. We disagree and conclude that the second reconstitution of the jury did not result in a manifest denial of justice warranting the grant of a new trial.

We first address defendant's characterization that there was a "vast discrepancy" between the length of time the first reconstituted jury deliberated

21

without reaching a verdict (four hours, forty minutes) and the length of time it took the second reconstituted jury to reach a unanimous verdict ( two hours, four minutes).

In Jenkins, the Court noted that "[a]s a general rule, '[t]he longer the period of time the jury deliberates, the greater is the possibility of prejudice should a juror be substituted or replaced.'"  182 N.J. at 132 (second alteration in original) (citing Miller, 76 N.J. at 407).  However, the Court also made clear that, "[t]he concern in determining whether substitution can take place at a given point in the deliberations is not merely the length of time that the jury has deliberated but the effect that the progress in deliberations will have on the reconstituted jury's ability truly to begin deliberations anew."  Ibid. (alteration in original) (citing Valenzuela, 136 N.J. at 474–75).

Our survey of the relevant case law informs us that the period of time the second reconstituted jury took to reach a verdict in this case was not so short as to reasonably suggest the alternate juror was not able to meaningfully participate in deliberations.  In Musa, the length of the juries' deliberations closely approximated the length of deliberations in this matter.  In that case, the first jury deliberated for four hours and twenty minutes before the court substituted a juror, after which the reconstituted jury deliberated for one hour and fifty

22

minutes. Musa, 222 N.J. at 559, 561. The Court rejected the defendant's challenge, holding that nothing in the record suggested the reconstituted jury had not conducted open-minded and fair deliberations. Id. at 572.

In Terrell, the first jury deliberated for approximately eight hours before the court substituted an alternate juror. 452 N.J. Super. at 270. Thereafter, the reconstituted jury deliberated for approximately two-and-one-half hours before reaching a verdict. Id. at 271. We rejected "defendant's speculative inferences in support of a claim of prejudice, drawn from the shorter period of deliberations undertaken by the reconstituted jury." Id. at 275.

The cases in which the defendants ultimately prevailed lend further support for our conclusion that the circumstances in this case do not warrant a new trial. In Jenkins, the Court relied mainly on the fact that the excused juror was the lone holdout in a jury ready to convict the defendant. Id. at 132–33.[6] The reconstituted jury deliberated for only twenty-three minutes before returning a verdict, lending credence to the Court's conclusion that the reconstituted jury did not restart deliberations. Id. at 133.

---

[6] In Jenkins, the juror who was excused told the court that she could not obey her sworn oath and follow the court's instructions on the law. Id. at 128.

In <u>State v. Williams</u>, the first jury deliberated for twelve hours before substitution of the alternate juror. 377 N.J. Super. 130, 150 (App. Div. 2005). The reconstituted jury deliberated for less than one hour before returning a verdict. <u>Ibid.</u> We determined in view of that discrepancy that the first jury was well-entrenched in deliberations at the time of substitution and that the resulting verdict was reached without input from the substituted juror. <u>Ibid.</u>

In the case before us, Judge Daniel calculated and carefully considered the discrepancy between the periods of deliberation and found that it did not provide a basis upon which to set aside the verdict. We see no reason to overturn the trial court's assessment.

Finally, we reject defendant's contention that the second reconstituted jury's failure to request a playback of testimony and video evidence somehow shows that the alternate juror was not able to meaningfully contribute to the deliberations. As Judge Daniel aptly noted, the reconstituted jury was a new jury restarting deliberations. It was under no obligation to reiterate the playback request that had been made by the former jury. We decline to speculate on how the deliberations of the first and second reconstituted juries may have differed. To do so would breach the confidentiality of the jury room. <u>See</u> <u>Musa</u>, 222 N.J. at 568 (admonishing courts to carefully circumscribe questioning of jurors when

determining whether to remove and replace a juror with an alternate juror in order to avoid "the inadvertent disclosure of confidential information" and to protect "the secrecy of jury deliberations for the purpose of encouraging free and vigorous discourse in the jury room" (quoting Jenkins, 182 N.J. at 134)). We would only note that the jury's decision not to reiterate the request for playback, if anything, supports the inference that the alternate juror had an impact on deliberations rather than the inference that he was not able to meaningfully participate.

In sum, we do not interpret the record to show that the jurors improperly truncated their deliberations at the expense of fulfilling their sworn obligation to consider all of the evidence fairly and impartially. Nor do we believe the trial judge in any way abused his discretion in managing the jury trial under the difficult circumstances presented by Superstorm Sandy. To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3828-15T3