**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1622-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOSE PINTO, a/k/a JOSE E.
PINTO, JR., JOSE N. PINTO,
and MUNCHO,

     Defendant-Appellant.

_____

Submitted November 12, 2019 – Decided February 27, 2020

Before Judges Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 16-07-2162.

Joseph E. Krakora, Public Defender, attorney for appellant (Brian P. Keenan, Assistant Deputy Public Defender, of counsel and on the briefs).

Jill S. Mayer, Acting Camden County Prosecutor, attorney for respondent (Linda Anne Shashoua, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Jose Pinto was charged in a four-count indictment arising from a motor-vehicle police pursuit, much of which was captured on dash-cam video, ending in a crash that injured a third party; a controlled dangerous substance (CDS) was found in defendant's vehicle. Defendant appeals from his conviction by jury for second-degree eluding, N.J.S.A. 2C:29-2(b) (count one), second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(6) (count two), and third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1) (count four);[1] and from his extended-term, fourteen-year prison term on count two, concurrent seven-year sentence on count one and consecutive three-year term on count four. In his merits brief, he argues:

> POINT I
>
> DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO COUNSEL OF CHOICE WHEN THE JUDGE REFUSED TO GRANT A CONTINUANCE SO THAT HE COULD RETAIN PRIVATE COUNSEL PRIOR TO THE TRIAL WITHOUT CAREFULLY CONSIDERING EACH OF THE FACTORS SET FORTH IN CASES SUCH AS STATE V. KATES.

---

[1] Count three of the indictment charging second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(6), was dismissed before trial.

2

POINT II

THE JUDGE IMPOSED A MANIFESTLY EXCESSIVE SENTENCE REQUIRING REVERSAL.

    A. ALTHOUGH SUPPORTED BY AMPLE EVIDENCE IN THE RECORD, THE JUDGE F[A]ILED TO FIND MITIGATING FACTOR ELEVEN.

    B. THE SENTENCING JUDGE ERRED IN DETERMINING THE EXTENDED-TERM SENTENCING RANGE FOR A SECOND-DEGREE OFFENSE.

    C. THE SENTENCING JUDGE ERRED IN FAILING TO CONSIDER THE YARBOUGH FACTORS WHEN IMPOSING A CONSECUTIVE TERM ON THE UNLAWFUL POSSESSION OF CDS CHARGE.

In a pro se brief, he adds:

POINT I

THE TRIAL COURT ERRED BY FAILING TO DECLARE A MISTRIAL AFTER THE JURY WAS TAINTED.

POINT II

THE TRIAL COURT ERRED BY PERMITTING THE STATE TO REVEAL THE NATURE OF DEFENDANT'S PRIOR CRIMINAL CONVICTIONS IN CONTRAVENTION TO [N.J.R.E.] [] 609 (A)(2)(II).

3

POINT III

THE TRIAL COURT ABUSED IT[S] DISCRETION
IN IMPOSING A[] [FOURTEEN] YEAR EXTENDED
TERM BECAUSE THE TRIAL COURT FAILED TO
EXPLAIN HOW HE ARRIVED AT SETTING THE
TERM WITHIN THE EXTENDED TERM RANGE.

Because of errors committed in excusing a deliberating juror, we are constrained to reverse and remand for a new trial.

During jury deliberations, the trial judge received a note that read: "Juror [number eight] would like to request an alternate due to personal reasons." In a subsequent colloquy with the judge, in both counsel's presence, when asked to tell the reason for her request, the juror said: "Personal matters from a couple years back. So I've been in a case, and I had to testify for someone. And like I'm traumatized about that situation. So my opinion in this has me a little shaky." The juror stated she felt she could not continue as a deliberating juror. The colloquy continued:

> [THE COURT]: Did anyone in the jury room in any way try to compel or force you to withdraw as a deliberating juror?
>
> [JUROR NUMBER EIGHT]: No.
>
> [THE COURT]: This is solely your decision based on a past traumatic incident in your life?
>
> [JUROR NUMBER EIGHT]: Yes.

4

In response to defense counsel's concern, the judge asked the juror if she discussed the issue with other jurors. The juror responded, "I talked to him about it and explained everything that happened. And he just told me if I felt like I'm not comfortable, then I should speak to you about the situation."[2] The juror then responded affirmatively to the judge's question: "And this is solely your decision because of the past traumatic event that you've gone through in your life?" The judge then asked the juror to return to the jury room with an instruction: "I'm going to ask that you ask the jurors not to conduct any further deliberation. They'll be brought back into the courtroom shortly."

The judge commented to counsel immediately after the juror returned to the jury room, "clearly she's emotionally upset about something that happened in her past, to the extent [that] she's advised them that she feels she can't deliberate any further." He announced his decision to release the juror and replace her with an alternate juror. Defense counsel interjected:

> Judge, my only concern is if there have been discussions regarding the incident. I would be compelled to ask for an individual polling to see if any relation of the incident from [j]uror [number eight] as to the other members of the panel effects their ability to be fair and impartial going forward on the case.

---

[2]  The record is silent as to whom juror number eight referred when she said "him" and "he."

The judge declined to individually poll the jurors, explaining that his additional instructions to the jury, including that to "disregard anything that's not been presented as evidence[,]" should address any concerns. Defendant's counsel responded, "Okay. Fair enough, [j]udge."

The jury returned and an alternate juror was selected. The judge instructed the reconstituted jury:

> Members of the jury, as you know, [j]uror [number eight] was excused from the jury. An alternate juror has been selected to take her place. The reason that she was excused was entirely personal to her. It had nothing to do with her views on this case or her relationship with the other members of the deliberating jury. Please do not speculate on the reasons why the juror was excused.
>
> As of this moment, you are a new jury, and you must start your deliberations over again. The parties have the right to have a verdict reached by . . . [twelve] jurors who have had the full opportunity to deliberate from start to finish.
>
> The alternate juror has no knowledge of any earlier deliberations. Consequently, the new deliberating juror must start over at the very beginning of deliberations. Each member of the original deliberating jury must set aside and disregard whatever may have occurred and anything that may have been said in the jury room following my instructions to you.
>
> You must give no weight to any opinion expressed by [j]uror [number eight] during deliberations before that juror was excused. Together, as a new jury, you must consider all evidence presented at trial as part of your full and complete deliberations until you reach your verdict.

6

And with that, I'm going to again ask that you
return to the jury room to begin your new deliberations.

The jury returned a verdict of guilty on the three counts it considered.[3]

Appellate review "of a trial court's decision to remove and substitute a deliberating juror because of an 'inability to continue,' pursuant to Rule 1:8-2(d)(1), is deferential. We will not reverse a conviction unless the court has abused its discretion." State v. Musa, 222 N.J. 554, 564-65 (2015) (quoting State v. Williams, 171 N.J. 151, 168 (2002)); State v. Valenzuela, 136 N.J. 458, 473 (1994).

The Sixth Amendment guarantees a criminal defendant the right to an impartial jury at trial, U.S. Const. amend. VI, and this right "goes to the very essence of a fair trial," State v. Williams, 93 N.J. 39, 60 (1983). The jury must be "free of outside influences and . . . decide the case according to the evidence and arguments presented in court in the course of the criminal trial itself." Ibid.

---

[3] The transcript does not indicate the length of jury deliberations before juror number eight requested an alternate juror take her place. Nor does it indicate the time the reconstituted jury deliberated before returning its verdict. We note court proceedings that day began at 9:05 a.m., and the jury heard testimony from four witnesses, including defendant. After proceedings outside of the jury's presence, the court broke for lunch from 11:40 a.m. until 1:00 p.m. when it resumed for a charge conference, followed by summations, jury instructions, initial deliberations, colloquy with juror number eight and reconstitution of the jury, final deliberations, return of the verdict and subsequent post-verdict proceedings. The record indicates the "matter concluded at 3:16 p.m."

7

New Jersey courts have noted that a defendant's right "to be tried by an impartial jury is of exceptional significance," so it must be "as nearly impartial 'as the lot of humanity will admit[.]'" Ibid. (quoting State v. Singletary, 80 N.J. 55, 62 (1979)).

Cognizant of defendant's constitutional guarantee of an impartial jury trial, we conclude the judge initially addressed juror number eight's request properly but went astray in failing to ascertain if her concerns tainted the remaining jurors. When he first received the juror's note, the judge followed our Supreme Court's instruction to "act swiftly to overcome any potential bias and to expose factors impinging on the juror's impartiality." State v. R.D., 169 N.J. 551, 558 (2001). The judge heeded the Court's mandated obligation that he "interrogate the juror, in the presence of counsel, to determine if there is a taint[.]" Ibid.

Unfortunately, the colloquy did not provide sufficient information for the judge to determine if juror number eight should be excused pursuant to Rule 1:8-2(d)(1) which provides:

> If the alternate jurors are not discharged and if at any time after submission of the case to the jury, a juror dies or is discharged by the court because of illness or other inability to continue, the court may direct the clerk to draw the name of an alternate juror to take the place of the juror who is deceased or discharged.

 A-1622-17T2

Notwithstanding what the Court characterized as the <u>Rule's</u>

> broad language, trial courts do not have unbridled discretion to reconstitute deliberating juries in the face of a jury crisis. On the contrary, the removal rule may be used only in limited circumstances. . . . [to] be invoked only as a last resort to avoid the deplorable waste of time, effort, money, and judicial resources inherent in a mistrial.
>
> [<u>State v. Hightower</u>, 146 N.J. 239, 253-54 (1996).]

The Court reiterated the <u>Rule's</u> inability-to-continue standard, that to remove a

juror,

> the record [must] adequately establish[] that the juror suffers from an inability to function that is personal and unrelated to the juror's interaction with the other jury members. If a court suspects that the problems with the juror are due to interactions with other jurors, the court should instruct the jury to resume deliberations.
>
> [<u>Hightower</u>, 146 N.J. at 254 (alterations in original) (quoting <u>Valenzuela</u>, 136 N.J. at 472-73).]

The <u>Hightower</u> Court cautioned

> the inability-to-continue standard may not be invoked to remove a deliberating juror when the record merely reveals that the juror has a position that is different from that of other jurors. Nor may the standard be employed to remove a deliberating juror where the record reveals that the juror's problems are related to both personal circumstances <u>and</u> factors arising from the juror's interactions with other jurors. In other words, the reason must be exclusively personal.

[Id. at 255 (citations omitted).]

By way of example, the Court has

> sanctioned the removal of a deliberating juror for "inability to continue" when the juror has "expressed refusal to abide by her sworn oath to follow the law," [State v. Jenkins, 182 N.J. 112, 130 (2004)], complained of financial hardship, Williams, 171 N.J. at 167, stated that his nervous and emotional condition "affect[ed] his judgment" and ability to render a fair verdict, State v. Miller, 76 N.J. 392, 401, 406-07 (1978), and "disregarded the court's unambiguous admonitions" and had a "conversation with a relative [that] patently influenced [her]," State v. Holloway, 288 N.J. Super. 390, 404 (App. Div. 1996). In those examples, the removal is for reasons personal to the juror and not for reasons relating to the interchange between jurors or the deliberative process.
>
> [Musa, 222 N.J. at 566-67 (second, third and fourth alterations in original).]

Thus, in Valenzuela, the Court concluded the trial court abused its discretion in discharging a juror where the record revealed "the juror's problems related not only to personal circumstances but also to factors arising from the juror's interactions with the other jurors. . . ."  136 N.J. at 473.

Although the trial judge elicited that no one compelled or forced juror number eight to withdraw as a deliberating juror, the colloquy between the trial court and juror number eight did not reveal if her request to be excused was

10

based on any interaction with other jurors. In other words, the judge did not discover if her request was based on her stance in deliberations as compared to that of fellow jurors. Nor did the judge inquire as to the nature of her past experience as a witness. In short, the trial court's colloquy was too short.

We recognize the trial court's role in questioning a deliberating juror involves a delicate balance between ascertaining details of the juror's reasons for seeking release from the deliberative process and maintaining the secrecy of jury deliberations. See Musa, 222 N.J. at 568-69; Jenkins, 182 N.J. at 134-35. "Generally, if a court inquires of a juror on the subject of 'inability to continue,' the questions must be carefully crafted to elicit answers that only bear on reasons personal to the juror and that in no way elicit the drift of the deliberations or voting inclinations of any juror." Musa, 222 N.J. at 569.

But, without ascertaining the nature of the personal information that caused the juror consternation—here, the nature of her testimony in another matter—and the person to whom she "talked . . . about it," the judge's questioning did not comport with the Court's instruction:

> An appropriate voir dire of a juror allegedly in possession of extraneous information . . . should inquire into the specific nature of the extraneous information, and whether the juror intentionally or inadvertently has imparted any of that information to other jurors. Depending on the juror's answers to searching

11

questions by the court, the court must then determine whether it is necessary to voir dire individually other jurors to ensure the impartiality of the jury. That determination should be explained on the record to facilitate appellate review under the abuse of discretion standard.

[R.D., 169 N.J. at 560-61.]

The judge's limited questioning of juror number eight was a mistaken exercise of discretion.

We also determine the judge abused his discretion in both failing to inquire with whom juror number eight had discussions and denying defendant's request to voir dire the remaining jurors about the impact of juror number eight's disclosure to "him" whom she referenced, or "them" that the judge alluded to when he stated that the juror was "emotionally upset about something that happened in her past, to the extent [that] she's advised them that she feels she can't deliberate any further." The judge should have also inquired if juror number eight said anything about her colloquy with the judge in court after she returned to the jury room, especially because the judge did not instruct juror number eight not to relate those discussions, or their subject matter, to the remaining jurors. See State v. Wormley, 305 N.J. Super. 57, 70 (App. Div. 1997) (finding that even though the excused juror stated she did not discuss

extraneous information with anyone, "there was a strong likelihood that, even indirectly or unintentionally, she may well have," in that there "was at least one break during which the jurors commingled"). The judge knew he was going to instruct the jury after replacing juror number eight. He should have warned juror number eight in light of that part of the instruction providing:

> the excused juror's departure was prompted by personal issues, rather than by his or her view of the case or relationships with other jurors, . . . the reconstituted jury should not speculate on the reasons for the juror's departure, and . . . the jury should begin deliberations anew by setting aside their previous discussions so that the reconstituted jury may conduct full and complete deliberations.
>
> [State v. Ross, 218 N.J. 130, 151 (2014).]

See also Model Jury Charges (Criminal), "Judge's Instructions When Alternate Juror Empaneled After Deliberations Have Begun" (rev. Mar. 14, 2016). The judge should have ensured that juror number eight did not inform the other jurors of the reason for her departure.

Our Supreme Court cautioned the "determination that the reasons for the removal of [a juror] were personal to [the juror] and not driven by the deliberative process does not resolve the question of whether it was appropriate to reconstitute the jury with an alternate juror." Jenkins, 182 N.J. at 130. The trial court must determine if the jury was tainted by a juror's extraneous

13

information. R.D. 169 N.J. at 559. "That determination requires the trial court to consider the gravity of the extraneous information in relation to the case, the demeanor and credibility of the juror or jurors who were exposed to the extraneous information, and the overall impact of the matter on the fairness of the proceedings." Ibid.

While "the decision to voir dire individually the other members of the jury best remains a matter for the sound discretion of the trial court," to which no per se rule pertains, id. at 561, the preferred practice, indeed duty, is to "ask probing questions to protect the impartiality of the jury," id. at 563. As we said in State v. Brown, 442 N.J. Super. 154, 181 (App. Div. 2015), "[a]lthough a deliberating juror's bias or prejudice falls within the 'inability to continue' standard, the court, in opting for substitution rather than a mistrial, must ensure, by appropriate voir dire, that the other jurors were not tainted by the removed juror."

Unlike in R.D., where "there was no meaningful opportunity for the other members of the jury to be tainted[,]" 169 N.J. at 563, juror number eight admitted she had discussed her personal information with someone. Further, she returned to the jury room after colloquy with the judge without any instruction to refrain from relating that colloquy with the other jurors; she was told only to "ask the jurors not to conduct any further deliberation."

The judge's abbreviated questioning did not disclose sufficient information for him to determine if the reason for juror number eight's request was just personal to her or whether her interactions with her fellow jurors influenced her request. Moreover, even if her excusal was appropriate, the questioning did not provide him enough information to determine whether it was appropriate to declare a mistrial or to empanel an alternate juror. The R.D. Court recognized the trial court's discretion in deciding whether a new trial based on juror taint is warranted, but affirmed its prior holding that

> "[i]f the irregular matter has that tendency on the face of it, a new trial should be granted without further inquiry as to its actual effect. The test is not whether the irregular matter actually influenced the result, but whether it had the capacity of doing so." [Panko v. Flintkote Co., 7 N.J. 55, 61 (1951)]; see also [Hightower, 146 N.J. at 266-267] (stating "[a]ny juror misconduct or improper intrusion into the deliberations of a jury that 'could have a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal proofs and the court's charge' is a ground for a mistrial"). The right to an impartial jury is of exceptional importance, and "that aspect of impartiality mandating 'that the jury's verdict be based on evidence received in open court, not from outside sources'" is particularly critical to fulfilling the essence of that right. [State v. Bey, 112 N.J. 45, 75 (1988)].
>
> [R.D. 166 N.J. at 558-59 (first and fourth alterations in original).]

15

The trial judge did not develop a full record that would properly inform a decision to replace juror number eight or to return her to deliberate; or to replace juror number eight with an alternate or to declare a mistrial. That improper exercise of discretion compels us to reverse defendant's conviction and remand this matter for a new trial. In light of our decision, we need not address defendant's other arguments.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION