SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Rolando Terrell (A-25-16) (077730)**

**(NOTE:  The Court did not write a plenary opinion in this case.  Instead, the Court affirms the judgment of the Appellate Division substantially for the reasons expressed in the per curiam opinion published at ___ N.J. Super. ___ (App. Div. 2016).)**

Argued September 25, 2017 -- Decided November 29, 2017

PER CURIAM

In this appeal as of right, defendant Rolando Terrell challenges the Appellate Division's affirmance of his convictions as to the three issues raised in the dissenting opinion:  the exclusion of the defense expert's testimony, the admission of testimony by the State's gang expert, and the replacement of a deliberating juror.

In April 2011, a jury convicted defendant of first-degree robbery and the second-degree offenses of conspiracy to commit robbery, unlawful possession of a handgun, possession of a handgun for an unlawful purpose, and conspiracy to commit arson for his role in the September 2008 arson, robbery, and murders of four people.  The jury was unable to render a verdict on the murder charges, as well as possession of a defaced firearm.  In a separate trial, the same jury convicted defendant of the separately charged persons not to possess weapons offense.  Defendant filed an appeal from the convictions.  Defendant was re-tried by a jury on the murder, felony murder, and firearm defilement charges; a second jury found defendant guilty of all eight homicide counts, but acquitted him on the weapon defilement count.

Defendant appealed, raising several issues for review.  In addition to claims beyond the scope of this appeal, defendant argued that his expert's testimony was improperly excluded, that the State's gang expert's evidence should not have been admitted, and that the trial court erred in excusing a juror during deliberation.  The appellate panel majority affirmed.  ___ N.J. Super. ___ (2016) (slip op. at 3).

Defendant sought to introduce expert testimony from Steven Penrod, a research psychologist and licensed attorney, identifying factors affecting the reliability of what he termed "earwitness" identification.  Defendant proffered his expert would inform the jury of relevant social science studies and experiments conducted by others regarding the potential for misidentification, designed to aid evaluation of the reliability of the survivor's voice recognition testimony.  The trial court concluded the expert's opinion was admissible in part to address the scientific evidence concerning factors affecting the accuracy of identifications.  The judge determined the limits of admissibility, deeming certain subjects inadmissible for reasons including:  the expert was found not qualified to address the area; the testimony risked misleading the jury; the concepts related matters of common sense; and the opinion tended to tread on the jury's credibility determinations.

The majority was unpersuaded by defendant's argument that "'the limited nature of testimony permitted under the [c]ourt's ruling' neutralized the effectiveness of Dr. Penrod as an expert and amounted to reversible error." (slip op. at 20) (alteration in original).  The majority concluded that the judge did not "abuse[] his discretion when limiting aspects of the proffered evidence," but rather "satisfactorily detailed areas where the expert's reasoning and methodology on 'earwitness' identification testimony seemed self-validating or jumbled with eyewitness identifications, a topic the expert was admittedly more familiar with." (slip op. at 31).  "As a result, the expert's proffered testimony not only risked juror confusion but also tended toward subjects where expert opinion would be unnecessary.  Further, the judge did not preclude the totality of the expert's testimony, which defendant chose not to present to the jury." (slip op. at 31-32).  Underscoring that "the identification at issue was the survivor's recollection it was defendant's voice she heard"—based on her familiarity with defendant and without prompting by police interrogation—the majority also observed that the identification "was one of several introduced by the State and [was] not the sole identification evidence placing defendant at the scene of the murders." (slip op. at 32).

1

Defendant also contended that the trial judge abused his discretion by allowing, over defendant's objection, testimony by the State's expert on gang-related activity, because defendant's involvement in a gang had no relevance to motive, opportunity, or the co-defendant's involvement in the crimes. As a result, its admission was extremely prejudicial, warranting a new trial. The majority disagreed and discerned "no basis to interfere with the judge's exercised discretion in admitting [the expert's] circumscribed testimony, which provided a framework for the jury's understanding of key events, testimony by the lay witnesses and the relationship between defendant and co-defendants." (slip op. at 39). The majority noted that "the judge mitigated possible prejudice through the use of direct voir dire questions during jury selection." (slip op. at 40).

After deliberations commenced in the retrial, two jurors—Number 2 and Number 6—asked to be excused. Defendant contended the court erred in handling the requests by not properly making necessary findings before excusing Juror Number 2. He maintained that the judge's inquiry and conclusory findings were flawed and that dismissal and replacement of the juror, over defendant's objection and rather than declaring a mistrial, was error.

The majority rejected defendant's arguments. The majority noted that the judge conducted separate limited voir dire of the jurors and that, as a result of the jurors' responses, the judge excused Juror Two and retained Juror Six. The majority stressed that "when 'evaluating the cause of a juror's departure, our courts distinguish between reasons that are personal to the juror, which may permit a substitution under Rule 1:8-2(d)(1), and issues derived from the juror's interaction with the other jurors or with the case itself, which may not.'" (slip op. at 51) (quoting State v. Ross, 218 N.J. 130, 147 (2014) (internal quotation marks omitted)). The majority observed that "the trial judge sought the explanation for juror two's request to be excused," "directed the juror not to reveal juror interactions and deliberations," and then "explained the release of juror two: 'I think she was pretty unequivocal that emotionally she cannot continue. I even got that sense from her voice. Her voice was cracking . . . .'" (slip op. at 52). The panel stated that, "[r]egardless of whether we believe the inquiry could have been more probing to more firmly establish the juror's specific reasons confirming her request was personal to her, we respect the trial judge's ability to assess the juror's demeanor to discern whether the concern was evoked from interaction with fellow jurors or an individualistic reaction in reviewing the matter." (slip op. at 52-53). Noting that "[t]he trial judge was in the best position to make these determinations," the panel concluded that "the trial judge properly carried out the delicate balancing function in exercising his reasoned judgment." (slip op. at 53). The majority further found that "the deliberations had not proceeded to such an extent that declaring a mistrial was required." (slip op. at 54).

The Honorable Carol E. Higbee, J.S.C., dissented on the grounds that: excluding almost all of the defense expert's testimony precluded defendant from presenting evidence that undermined the testimony of a witness who identified defendant; the prejudice to defendant caused by the State's expert's opinions about street gangs substantially outweighed the probative value of those opinions; and the trial court erred by replacing a deliberating juror based on a limited and inadequate inquiry into the juror's reasons for wanting to be excused. Any one of those errors had the clear capacity to affect the outcome of the trials, in the dissent's view; cumulatively, they left no reasonable doubt defendant was denied fair trials.

Defendant filed a notice of appeal as of right. Defendant also petitioned for certification, seeking review of the Appellate Division decision in its entirety. The Court denied that petition. 227 N.J. 386 (2016).

**HELD:** The judgment of the Appellate Division is affirmed substantially for the reasons expressed in the per curiam opinion.

**JUSTICE ALBIN, DISSENTING IN PART**, agrees with Judge Higbee that the removal of Juror Number Two without adequate cause compromised defendant's right to a fair trial. A juror cannot be excused unless the circumstances relate exclusively to the personal situation of the juror himself and not to his interaction with the other jurors or with the case itself. The court's colloquy was fatally flawed because it did not adequately establish that the juror's emotional distress was unrelated to the juror's interaction with the other jury members. The court's removal of Juror Number Two without determining that she was unable to function in accordance with Rule 1:8-2(d)(1) constituted unwarranted judicial interference with the integrity of the deliberative process, in Justice Albin's view.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in this opinion. JUSTICE ALBIN filed a separate opinion, dissenting in part.**

2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

      v.

ROLANDO TERRELL,

    Defendant-Appellant.


      Argued September 25, 2017 – Decided November 29, 2017

      On appeal from the Superior Court, Appellate
      Division, whose opinion is reported at ___
      N.J. Super. ___ (App. Div. 2016).

      Joseph E. Krakora, Public Defender, argued
      the cause for appellant (Joseph E. Krakora,
      Public Defender, attorney; Joseph E. Krakora
      and Alison Perrone, of counsel and on the
      brief).

      Lucille M. Rosano, Special Deputy Attorney
      General/Acting Assistant Prosecutor, argued
      the cause for respondent (Robert D. Laurino,
      Acting Essex County Prosecutor, attorney;
      Lucille M. Rosano, of counsel and on the
      brief).

      Sarah E. Ross, Deputy Attorney General,
      argued the cause for amicus curiae Attorney
      General of New Jersey (Christopher S.
      Porrino, Attorney General, attorney; Sarah
      E. Ross, of counsel and on the brief).

PER CURIAM

The judgment of the Superior Court, Appellate Division is affirmed, substantially for the reasons expressed in the majority's PER CURIAM opinion, reported at ___ N.J. Super. ___ (App. Div. 2016).


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in this opinion. JUSTICE ALBIN filed a separate opinion, dissenting in part.

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

ROLANDO TERRELL,

    Defendant-Appellant.

    JUSTICE ALBIN, dissenting in part.

    The trial court erred in the second trial by removing a deliberating juror without determining whether her expressed emotional discomfort was related to juror discussions or conflicts with other jurors. A juror cannot be relieved of her duty because the deliberations are unpleasant or difficult, causing emotional turmoil or anxiety. To avoid the potential of improperly removing a juror for reasons related to the deliberative process, our trial judges must engage in a thorough yet precise colloquy.

    The trial court's limited dialogue with Juror Number Two failed that test. Although the court questioned Juror Number Two about her emotional ability to continue, the court asked no questions concerning the source of her emotional distress. Precisely directed questions could have eliminated the possibility that the court unwittingly was removing a dissenting

1

juror who felt put upon by the majority.  Because the removal of Juror Number Two without adequate cause compromised defendant's right to a fair trial, I agree with Judge Higbee that a new trial should have been granted.

Rule 1:8-2(d)(1) governs the removal of a juror after the commencement of deliberations.  It provides that, during deliberations, a court may select an alternate juror only if "a juror dies or is discharged by the court because of illness or other inability to continue."  R. 1:8-2(d)(1).  Here, we are concerned about the "inability to continue" provision of that rule.  We have restrictively construed that provision "to protect a defendant's right to a fair jury trial."  State v. Jenkins, 182 N.J. 112, 124 (2004).  A trial court is forbidden from removing a deliberating juror when the "removal is in any way related to the deliberative process."  Ibid.; see also State v. Musa, 222 N.J. 554, 566 (2015) ("[T]he removal of a juror because he is disputatious and does not share the views of other jurors would undermine the very essence of the free and open debate that is expected of jury deliberations.").

A juror cannot be excused unless the circumstances "relate exclusively to the personal situation of the juror himself and not to his interaction with the other jurors or with the case itself."  State v. Valenzuela, 136 N.J. 458, 468 (1994) (quoting State v. Trent, 157 N.J. Super. 231, 239 (App. Div. 1978), rev'd

2

on other grounds, 79 N.J. 251 (1979)).  Moreover, a juror may not be removed "unless the record 'adequately establish[es] that the juror suffers from an inability to function that is personal and unrelated to the juror's interaction with the other jury members.'"  Jenkins, 182 N.J. at 124-25 (alteration in original) (quoting State v. Hightower, 146 N.J. 239, 254 (1996)).  A juror's emotional or psychological inability to function because of the death or illness of a family member, a work-connected crisis, or a threat directed to her outside the jury room are personal to her and unrelated to the deliberative process.  Those may be adequate reasons for the removal of a juror consistent with Rule 1:8-2(d)(1).  A physical or mental illness that renders a juror unable to deliberate also would be an adequate reason.  Emotional angst caused by the grueling and sometimes harsh give-and-take among jurors is not.

On the first day of deliberations, the jury sent a note to the court advising that, earlier in the day, a man outside the courthouse had said to Juror Number Two, as she passed by, "not guilty."  The trial court interviewed each juror, including Juror Number Two, and all said the event would not affect their ability to serve and remain impartial.  The jury continued to deliberate that day and for two additional days.  On the third day, Juror Number Two and another juror asked to be removed as deliberating jurors.

3

The court engaged in a colloquy with Juror Number Two, advising her not to reveal anything about the jury deliberations. Their brief dialogue follows:

> The Court: Do you feel that there is emotionally an inability for you to proceed and perform your duties as a deliberating juror?
>
> The Juror: Yes.
>
> The Court: Do you feel that these emotions that you have, again, would impact upon your ability to perform your function in this case?
>
> The Juror: No. I know it's not balanced in what I'm saying, but there's reasons why I can't speak without giving away --
>
> The Court: I don't want you to talk about that. But emotionally, you feel you can't continue?
>
> The Juror: Correct.
>
> The Court: I'm going to leave it at that for now. Thank you.

Based on that perfunctory exchange, which elicited contradictory responses, the court removed Juror Number Two.

Nowhere in the colloquy did the court ensure that Juror Number Two's "emotions" were unrelated to the jury deliberations. The court could have pointedly asked whether her reasons to be removed concerned a personal matter -- such as illness or a family problem -- unrelated to the deliberations, and if she said yes, the court could have made further inquiry.

4

The court also could have asked the juror whether her "emotions" related to her earlier encounter outside the courthouse, even though after the incident she averred she could be impartial. If she said yes, that would have been a legitimate basis for her removal. Last, the court could have requested the juror to give a simple yes or no answer to the question of whether her emotional discomfort related to the deliberative process with her fellow jurors -- while expressly admonishing the juror to say nothing about the actual deliberations or any juror's views or the vote count. The court's colloquy was fatally flawed because it did not adequately establish that the juror's emotional distress was "unrelated to the juror's interaction with the other jury members." See id. at 125.

After Juror Number Two's removal and the selection of an alternate juror, the jury returned a verdict in less than two and a half hours. The court's removal of Juror Number Two without determining that she was unable to function in accordance with Rule 1:8-2(d)(1) constituted unwarranted judicial interference with the integrity of the deliberative process. I concur with Judge Higbee's conclusion that defendant was entitled to a new trial.

5