**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2476-17T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

BRYANT LAMBERT, a/k/a
BRIAN LAMBERT,

    Defendant-Appellant.

_____

Submitted April 27, 2020 – Decided May 11, 2020

Before Judges Fasciale and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 17-03-0355.

Joseph E. Krakora, Public Defender, attorney for appellant (Robert C. Pierce, Designated Counsel, on the brief).

Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from his convictions for eleven counts of first-degree armed robbery, N.J.S.A. 2C:15-1(a)(2) (counts one through eleven); three counts of the disorderly persons offense of simple assault, N.J.S.A. 2C:12-1(a)(1) (counts fourteen through sixteen); and one count of fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (count seventeen).[1] We affirm.

Defendant and two others entered an apartment and robbed all occupants inside. They took the victims' wallets, jewelry, and cell phones, placing the stolen property into a pillowcase. Defendant and the others fled the scene in a vehicle. Once police arrived, the victims gave them a general description of their assailants as three black males, and the general direction in which the assailants fled. Police chased the vehicle, which abruptly stopped near a park, and its occupants ran in different directions. Police found defendant in the park out of breath, muddy, and without shoes. He was arrested for being in the park after hours.

---

[1] The jury found defendant not guilty of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count twelve), and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) (count thirteen).

Police secured a search warrant and searched the vehicle, in which they found a brown pillowcase containing money, the victims' wallets, and the victims' cell phones. The wallets contained the victims' identifications.

On appeal, defendant argues:

POINT I

THE [JUDGE] ERRED BY RESTRICTING [DEFENDANT'S] CROSS-EXAMINATION OF THE ARRESTING OFFICER CONCERNING THE ACTIONS AND STATEMENTS OF [DEFENDANT] WHEN HE FIRST ENCOUNTERED THE OFFICER, WHICH DEPRIVED [DEFENDANT] OF HIS SIXTH AMENDMENT RIGHT TO CONFRONT HIS ACCUSER.

POINT II

[DEFENDANT] WAS DEPRIVED OF A FAIR TRIAL BECAUSE THE PROSECUTOR STATED – IN THE PRESENCE OF THE JURY – THAT "[DEFENSE COUNSEL] IS TRYING TO SOLICIT DEFENDANT'S STATEMENTS FROM [THE ARRESTING OFFICER]."

POINT III

PROSECUTORIAL MISCONDUCT DURING THE PROSECUTOR'S OPENING STATEMENT AND SUMMATION DENIED [DEFENDANT] A FAIR TRIAL.

A. THE [ASSISTANT] PROSECUTOR COMMITTED MISCONDUCT IN HIS OPENING STATEMENT BY PROVIDING FACTS THAT WOULD BE

3                                          A-2476-17T22476-17T2

INADMISSIBLE AT TRIAL. (NOT RAISED BELOW).

B. THE [ASSISTANT] PROSECUTOR COMMITTED MISCONDUCT DURING HIS SUMMATION BY MISCHARACTERIZING THE DEFINITION OF REASONABLE DOUBT. (NOT RAISED BELOW).

C. THE [ASSISTANT] PROSECUTOR COMMITTED MISCONDUCT DURING HIS SUMMATION BY COMMENTING ON A SCIENTIFIC TEST THAT WAS NOT IN EVIDENCE.

D. CONCLUSION.

POINT IV

THE [JUDGE] ERRED BY NOT GRANTING [DEFENDANT'S] MOTION FOR A JUDGMENT OF ACQUITTAL ON COUNTS SEVEN, NINE AND TEN BECAUSE THE ALLEGED VICTIMS DID NOT TESTIFY AT TRIAL.

POINT V

THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.

I.

We begin by addressing defendant's argument that the judge erred in limiting his counsel's cross-examination of the arresting officer (the officer) when defense counsel asked the officer about a statement defendant made after the robbery. Defense counsel asked the officer if he remembered defendant

saying he was just robbed. The judge sustained the assistant prosecutor's objection, ruling that it was improper for counsel to elicit this statement from the officer because it was self-serving and did not have a "good faith basis." Defense counsel did not proffer any basis for the statement's admissibility.

"Generally, when reviewing the admission or exclusion of evidence, [we] afford '[c]onsiderable latitude' to a trial judge's determination, examining 'the decision for abuse of discretion.'" State v. Terrell, 452 N.J. Super. 226, 248 (App. Div. 2016) (second alteration in original) (quoting State v. Kuropchak, 221 N.J. 368, 385 (2015)), aff'd, 231 N.J. 170 (2017); State v. Castagna, 400 N.J. Super. 164, 182 (App. Div. 2008). "Importantly, '[u]nder th[is] standard, [we] should not substitute [our] own judgment for that of the trial [judge], unless "the trial [judge's] ruling was so wide of the mark that a manifest denial of justice resulted."'" Terrell, 452 N.J. Super. at 248 (first and second alterations in original) (quoting Kuropchak, 221 N.J. at 385-86).

A judge may properly exclude exculpatory statements because "a self-serving statement made after the commission of a crime provides too much opportunity for contrivance to warrant admission." State v. Gomez, 246 N.J. Super. 209, 215-16 (App. Div. 1991). "While a defendant has a Sixth Amendment right to offer evidence that refutes guilt or bolsters his claim of

innocence, that evidence must be competent, relevant and not unduly prejudicial." State v. Nevius, 426 N.J. Super. 379, 397 (App. Div. 2012) (citations omitted).

We conclude the judge did not abuse his discretion. On cross-examination—after defense counsel asked the officer if he remembered defendant saying that he himself had just been robbed—the officer said no. After the question had been asked and answered—twice—the assistant prosecutor objected, arguing that defense counsel was trying to introduce hearsay: Defendant's out of court statements to the officer. The judge correctly sustained the objection but did not strike the answers.

Although defendant argues the judge restricted the examination on this subject, the subject was improper because there was no evidence suggesting that defendant told the officer that he was robbed. Nevertheless, defendant's contention is moot because the officer answered the question twice. Even if there was a basis to ask the question—which there was not—the response called for hearsay and would have been inadmissible. Furthermore, defendant allegedly made the statement after the robbery, thus it lacked reliability. Gomez, 246 N.J. Super. at 215-16.

## II.

Defendant argues the assistant prosecutor committed misconduct, pointing to three instances. Our standard of review of such an argument is settled. "[P]rosecutors occupy a unique position in the criminal justice system and . . . their primary duty is not to obtain convictions[,] but to see that justice is done." State v. Zola, 112 N.J. 384, 426 (1988). A prosecutor's misconduct must have been so egregious to have deprived defendant of a fair trial. State v. Wakefield, 190 N.J. 397, 446 (2007). We will not reverse a defendant's convictions, despite prosecutor misconduct, unless such conduct was so egregious that it deprived the defendant of a fair trial. State v. DiFrisco, 137 N.J. 434, 474 (1994). To reverse, the prosecutor's conduct must constitute a clear infraction and substantially prejudice the defendant's fundamental right to have the jury fairly evaluate the merits of his or her defense. State v. Roach, 146 N.J. 208, 219 (1996).

"In determining whether a prosecutor's misconduct was sufficiently egregious, [we] 'must take into account the tenor of the trial and the degree of responsiveness of both counsel and the court to improprieties when they occurred.'" State v. Frost, 158 N.J. 76, 83 (1999) (quoting State v. Marshall, 123 N.J. 1, 153 (1991)). This court should examine whether timely and proper

A-2476-17T22476-17T2

objections were raised; whether the offending remarks were promptly withdrawn; and whether the trial judge struck the remarks and gave instructions to the jury. State v. Smith, 212 N.J. 365, 403 (2012). We will take each of defendant's three arguments of purported misconduct in turn.

A.

Defendant first argues, for the first time on appeal, the assistant prosecutor committed misconduct when he said—in a speaking objection to a line of questioning of the officer by defense counsel—"[Defense counsel is] trying to solicit defendant's statements from [the arresting officer]." Defendant claims his counsel objected to the statement, but the judge took no action. He further asserts that the assistant prosecutor's statement and the judge's inaction deprived him of a fair trial because the jury heard defendant gave a statement that may have been incriminating about which they did not hear during trial.

"When a defendant fails to object to an error or raise an issue before the trial [judge], we review for plain error." State v. Ross, 229 N.J. 389, 407 (2017) (quoting R. 2:10-2). We may only reverse if the error was "clearly capable of producing an unjust result." Ibid. (quoting R. 2:10-2). We see no error, let lone plain error.

During a sidebar conference, out of the jury's presence, the judge said:

8

> You're the one that's asking him about . . . [defendant's] statement. I'm going to sustain the objection. I'm going to tell the jury that[] it['s] an improper line of questioning. Because . . . you are trying to solicit or elicit from this police officer certain parts of [defendant's] statement that are self-serving or exculpatory.

We conclude there is no prosecutorial misconduct. Setting aside that defense counsel attempted on cross-examination of the officer to elicit the statement itself, the assistant prosecutor's remark—given the circumstances—did not amount to misconduct or plain error. If anything, the comment was fleeting and in direct response to the cross-examination.

## B.

Defendant, for the first time on appeal, contends that the assistant prosecutor committed misconduct during his opening statement by stating that the motor vehicle had a brown bag on the floor that resembled the bag the victims described. He argues the prosecutor improperly stated that an officer called a victim's cell phone and heard it ringing from inside the bag. Further, he states the prosecutor made this statement despite the phone call's inadmissibility. We consider defendant's contentions for plain error. R. 2:10-2.

Our review of a prosecutor's opening statement "is two-fold: [W]hether the prosecutor committed misconduct, and, if so, 'whether the prosecutor's

9

conduct constitutes grounds for a new trial.'" State v. Wakefield, 190 N.J. at 446 (quoting State v. Smith, 167 N.J. 158, 181 (2001)). When making opening statements, "prosecutors should limit comments . . . to the 'facts [they] intend[] in good faith to prove by competent evidence[.]'" State v. Echols, 199 N.J. 344, 360 (2009) (first and second alterations in original). "A prosecutor's opening statement should be limited to what the prosecutor 'will prove' and 'not anticipate' the prosecutor's summation." State v. Rivera, 437 N.J. Super. 434, 446 (App. Div. 2014) (quoting State v. Ernst, 32 N.J. 567, 577 (1960)).

Here, the assistant prosecutor mentioned admissible evidence—the pillowcase, its contents, and where it was found—when he summarized the State's case. The assistant prosecutor did not mention the phone call to show that it took place or that the victim gave his phone number to the police—which would be hearsay and inadmissible. Rather, the prosecutor mentioned the phone call to show police had probable cause for the car's search, evidence that the judge—during pretrial motions—already ruled admissible to show probable cause. Furthermore, the cell phone remark was harmless because the victims identified the items located in the bag, and because they testified that they were robbed at gunpoint.

C.

Defendant, again for the first time on appeal, argues the assistant prosecutor committed misconduct during his summation by mischaracterizing the definition of reasonable doubt. And that the assistant prosecutor's use of the words "fairy tales" and "Stephen King novels" "improperly denigrated his defense and was a complete misstatement of the law, which deprived [him] of a fair trial." We consider these contentions for plain error. Raised below, defendant also claims the prosecutor committed misconduct during his summation when he commented on a scientific test that was not in evidence.

"Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." Frost, 158 N.J. at 82. Prosecutors "are expected to make vigorous and forceful closing arguments to juries." Ibid. "So long as he [or she] stays within the evidence and the legitimate inferences therefrom[,] the [p]rosecutor is entitled to wide latitude in his summation." State v. Mayberry, 52 N.J. 413, 437 (1968). But, a prosecutor's primary duty "is not to obtain convictions, but to see that justice is done." State v. Ramseur, 106 N.J. 123, 320 (1987).

As to defendant's reasonable doubt argument, the assistant prosecutor stated in his summation:

11

Ladies and gentlemen, when the [j]udge talks about beyond a reasonable doubt, remember he told you it doesn't [mean] beyond all doubt. The human mind is a crazy thing. We can come up with so many wild, crazy scenarios. All sorts of thing[s]. Stephen King, fiction, fairy tales. The human capacity for an imagination is endless. But that's not what beyond a reasonable doubt means. It doesn't mean we can imagine some implausible, wild, alternate scenario that's reasonable doubt. Reasonable doubt is by its own reasonable.

After the prosecutor's statements, the judge instructed the jury as to the meaning of "reasonable doubt." The judge emphasized: "[R]easonable doubt is an honest and reasonable uncertainty in your minds about the guilt of the defendant after you have given full and impartial consideration to all of the evidence." The jury is presumed to have followed that instruction. See State v. Loftin, 146 N.J. 295, 390 (1996). The judge gave the correct charge on reasonable doubt and properly instructed the jury on how to consider counsels' summation arguments. There is no prejudice as to the comments in summation, and we conclude there is no error.

As to the assistant prosecutor's reference to "fairy tales" and "Stephen King," we agree with the judge that the assistant prosecutor was making an analogy. Also, defense counsel used the same "fairy tales" analogy in his opening statement. Thus, there is no error.

12                                                      A-2476-17T22476-17T2

Finally, the assistant prosecutor in his summation mentioned a YouTube video relating to cognitive recall. He said:

> [T]here was a thing going around a few years ago on [YouTube] where it was a test of perception to see if people [recalled certain conduct.]
>
> . . . .
>
> [A]nd . . . there was a bunch of people standing around passing a ball back and forth. . . . And the message pops up to start count[ing] how many times the ball is passed. And the people pass[] the ball back and forth. And the thing ends, and you're expecting them to say how many times . . . the ball [was] passed, [but rather the] question said, did you see the gorilla go through the middle of the room? And as these people [were] passing the ball back and forth, there[] [was] literally a guy in a gorilla suit who dance[d] across the middle of the room.

Defense counsel objected to the prosecutor's statement. The judge overruled counsel's objection, stating: "Well, I don't think that . . . he was using it as a scientific study. I think he was trying to make an analogy." Analogies during summations are permissible. See State v. Koskovich, 168 N.J. 448, 534-35 (2001) (finding the prosecutor's analogy concerning soldiers and terminal cancer patients permissible); State v. Michaels, 264 N.J. Super. 579, 641 (App. Div. 1993) (finding the prosecutor could use a "puzzle analogy" to argue that the defendant was guilty), aff'd, 136 N.J. 299 (1994).

Although we must give "leeway" to the assistant prosecutor, his or her arguments must be related to the evidence presented at trial. Frost, 158 N.J. at 82. Throughout cross-examination, defense counsel challenged the witnesses' memories on the number of robbers, whether the robbers were masked, and whether the robbers were African American. The assistant prosecutor's recall analogy relates to defense counsel's challenges. Thus, we see no prosecutorial misconduct warranting reversal.

### III.

Defendant argues the judge erred by not granting his motion for a judgment of acquittal on counts seven, nine and ten because "the alleged victims did not testify at trial." He claims his Sixth Amendment right to confront these victims was violated. Further, he states that the State failed to prove all elements of robbery as to these victims because they did not testify.

We review a trial judge's decision on a motion for judgment of acquittal using the same Reyes standard as the trial judge. State v. Johnson, 287 N.J. Super. 247, 268 (App. Div. 1996). A judge considering a defendant's motion

> [a]t the close of the State's case or after the evidence of all parties has been closed . . . shall . . . order the entry of a judgment of acquittal of one or more offenses charged . . . if the evidence is insufficient to warrant a conviction.

14                                                        A-2476-17T22476-17T2

[R. 3:18-1.]

The standard is:

> [W]hether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [State v. Reyes, 50 N.J. 454, 459 (1967).]

Here, defendant challenges counts seven, nine, and ten—all first-degree robbery charges. To convict a defendant of robbery, the prosecutor must prove that in the course of committing a theft, the defendant:

> (1) Inflicts bodily injury or uses force upon another; or
>
> (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
>
> (3) Commits or threatens immediately to commit any crime of the first or second degree.
>
> [N.J.S.A. 2C:15-1.]

When a defendant is charged with first-degree armed robbery, the prosecutor must also prove that the defendant attempted to kill another person, "or purposely inflict[ed] or attempt[ted] to inflict serious bodily injury, or [was] armed with, or use[d] or threaten[ed] the immediate use of a deadly weapon." Ibid.

"The right of an accused to be confronted by the witnesses against him is protected by the Sixth Amendment to the United States Constitution and by the Constitution of New Jersey." State v. Benitez, 360 N.J. Super. 101, 113 (App. Div. 2003) (quoting State v. Nutter, 258 N.J. Super. 41, 53 (App. Div. 1992)). "The Confrontation Clause guarantees two types of protection to a criminal defendant: (1) [T]he right to physically confront witnesses against him; and (2) the right to cross-examine." Ibid.

First, as to defendant's Confrontation Clause challenge, defendant failed to raise this argument. Defendant only argued that counts seven, nine and ten should be dismissed because the State lacked evidence to establish first-degree robbery. Second, the victims did not need to testify as the State relied on circumstantial evidence to establish its case beyond a reasonable doubt.

We also agree with the judge's analysis under Reyes and that the assistant prosecutor put forth ample evidence as to counts seven, nine, and ten. The judge stated the proper standard:

> [Rule] 3:18-1 provides that the [c]ourt shall dismiss a count in the indictment if the evidence is insufficient to warrant a conviction. What we have here is proof of an event where [eleven] people were in a[n] illegal or unlawful gambling facility when they were confronted by . . . approximately three masked men. Who, according to the testimony of the victim[s], robbed . . .

at gunpoint or with what appeared to be a gun. And the three then fled.

Related to count seven, the judge stated that "we [have] the victim – we [have] his wallet – in evidence." The judge said the State relied on circumstantial evidence to establish this count and that the victim did not need to testify.

Further, as to counts nine and ten, the judge accepted the prosecutor's explanation on how he put forth evidence of the first-degree robbery elements. As to count nine, the assistant prosecutor stated:

> [T]here was testimony that [the victim] was present inside [the apartment] during the robbery. And in [the police report] there's an indication that the pillowcase contained a wallet with [the victim's] license and other identifying credentials inside of it. Obviously, the jury could infer that since he was present and his property ended up in that [pillowcase], he also was the victim of a robbery.

As to count ten, the assistant prosecutor emphasized:

> I believe there was testimony that [this victim] was one of the people specifically [addressed] when [the officer] was cross-examined and [defense counsel] went through the list of every single person who said they were present and gave a description . . . of what property of theirs was taken[.] [This victim] was one of the people that was referenced in that testimony. And, additionally, he is listed on the property report. I believe one of the items says that there was a wallet recovered with [this victim's identification.]

We conclude that the assistant prosecutor presented sufficient circumstantial evidence that these victims were in the apartment during the robbery and were robbed at gunpoint.

IV.

Finally, defendant argues his sentence is "manifestly excessive." Defendant was sentenced to a total of eighteen years' imprisonment subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on counts one through eleven and counts fourteen through sixteen; and one year imprisonment for count seventeen, to run consecutive to his eighteen-year sentence. He claims the judge erred because he did not consider that "[defendant] was nineteen years old [at the time of the robbery] with no adult convictions or arrests and was substantially influenced by [his] co-defendant[.]"

We review the trial judge's sentencing decision for an abuse of discretion. State v. Blackmon, 202 N.J. 283, 297 (2010). We will not disturb a sentence unless it is manifestly excessive or unduly punitive. State v. O'Donnell, 117 N.J. 210, 215-16 (1989). This court must consider "whether the trial [judge] . . . made findings of fact that are grounded in competent, reasonably credible evidence and whether the 'factfinder [has] appl[ied] correct legal principles in

exercising [his or her] discretion.'" Blackmon, 202 N.J. at 297 (third and fourth alterations in original) (quoting State v. Roth, 95 N.J. 334, 363 (1984)).

We should not set aside a sentence unless: "(1) [T]he sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (second alteration in original) (quoting Roth, 95 N.J. at 364-65). A judge "first must identify any relevant aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b) that apply to the case." State v. Case, 220 N.J. 49, 64 (2014). He or she then must "determine which factors are supported by a preponderance of [the] evidence, balance the relevant factors, and explain how it arrives at the appropriate sentence." O'Donnell, 117 N.J. at 215.

Contrary to defendant's argument, the judge did consider his age and lack of criminal history. The judge stated:

> In this case, defendant is [twenty] years old. At the time of the offense he was [nineteen]. So . . . he's relatively young. Looking at his criminal history, I mean, he's too young to have much of a criminal history, but he does have a juvenile history. In September of 2010[,] he was charged with a simple assault, he got a deferred disposition. [In] July of 2013, he was charged with a robbery, which according to his

rap sheet, reflects a gang[-]related offense[,] [f]or which he received . . . some sort of non[-]custodial term.

Thereafter[,] he violated his probation twice. As an adult, in September of 2012, he was charged with a theft, but there's no disposition. However, in August of 2015[,] he[] [was] charged with, and it looks like he pled guilty in municipal court, to hindering.

. . . .

And then in May of 2016[,] he was charged with a robbery.

Considering this information, the judge found aggravating factors three (the risk that defendant will commit another crime) and nine (the need for deterrence). He found no mitigating factors and that the aggravating factors therefore outweighed the mitigating factors. After the judge balanced these factors, he sentenced defendant to a total of eighteen years' imprisonment subject to NERA for counts one through eleven and counts fourteen through sixteen; and one year imprisonment for count seventeen, to run consecutive to his eighteen-year sentence.

The judge applied the sentencing guidelines and determined which aggravating and/or mitigating factors applied. He sentenced defendant within the sentencing guidelines. Therefore, we conclude the judge did not abuse his discretion and defendant's sentence was not manifestly excessive.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION