**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4298-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROLANDO TERRELL,

    Defendant-Appellant.

_____

Submitted March 15, 2021 – Decided June 1, 2021

Before Judges Fasciale and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 09-07-2029.

Joseph E. Krakora, Public Defender, attorney for appellant (Howard W. Bailey, Designated Counsel, on the brief).

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Lucille M. Rosano, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from a January 18, 2019 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. Judge Verna G. Leath heard oral argument and rendered a comprehensive oral decision on the record. Defendant is presently serving multiple life sentences on his trial convictions for four murders that were committed in the course of a home invasion robbery. He contends counsel rendered ineffective assistance at his second trial by failing to call his girlfriend as an alibi witness, by failing to challenge the identification testimony of a witness at the first trial who saw him flee from the robbery-murder scene, and by failing to call that witness at defendant's second trial. We reject these contentions and affirm the denial of PCR substantially for the reasons set forth in Judge Leath's thorough and thoughtful opinion.

The procedural history and relevant facts are fully recounted in our prior published opinion and need not be repeated at length in this opinion. State v. Terrell, 452 N.J. Super. 226 (App. Div. 2016). It is sufficient for present purposes to note that defendant was charged by indictment with multiple counts of first-degree robbery, conspiracy to commit robbery, four counts of knowing/purposeful murder, four counts of felony-murder, aggravated arson and conspiracy to commit arson, and related weapons offenses, including

2

possession of a firearm by a previously convicted felon.[1]  Defendant was initially tried in March and April 2011.  That trial resulted in convictions for robbery, conspiracy to commit robbery, and weapons offenses.  Defendant was acquitted on one of the robbery counts and one count charging aggravated arson.  The jury was unable to reach a verdict on the murder charges and the count charging possession of a defaced firearm.  The trial judge at the initial sentencing hearing determined that defendant was a habitual offender and imposed a life term.  In June and July 2012, defendant was retried on the murder and defaced firearm charges.  This time, he was convicted on all counts charging murder and acquitted on the defaced firearms charge.  He was sentenced on the murder convictions to four consecutive seventy-five-year terms subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.  The sentences imposed on the 2012 murder convictions were ordered to run consecutively to the aggregate sentence imposed on the 2011 trial convictions.

On direct appeal, we consolidated the issues arising from both trials and affirmed defendant's convictions in a published opinion.  Terrell, 452 N.J. Super.

---

[1]  The indictment pertains to a single criminal episode.  The multiple robbery and homicide counts reflect that there were multiple victims.

at 226.[2]  The Supreme Court affirmed in a one-sentence per curiam decision. State v. Terrell, 231 N.J. 170 (2017).  In January 2019, defendant filed a pro se petition for PCR.  Assigned PCR counsel thereafter filed a supporting brief.[3]

We next briefly summarize the relevant facts pertaining to the horrific crimes for which defendant was convicted.  The State at the second trial elicited evidence that on September 8, 2008, defendant and co-defendant Lester Hayes[4] went to 172 Columbia Avenue in Irvington to commit a robbery.  Defendant targeted that house because he believed they would find drugs and cash proceeds from a gang-involved drug distribution enterprise.  Defendant explained to Hayes, "I know the person, the girl that lives here, and her boyfriend is in prison, so we going to go in here, get this shit, and come right out, it's going to be real easy, you know, you ain't got to worry about nuttin."

Defendant was armed with a handgun.  He also brought a beer bottle that he had filled with gasoline.  Once inside the home, defendant demanded to know

---

[2] Justice Albin filed a separate opinion, dissenting in part, but only discussed a juror's removal.  Id. at 171 (Albin, J., dissenting).

[3] We note that several contentions that defendant raised in his PCR petition are not raised in this appeal.

[4] Hayes testified for the State pursuant to a cooperation plea agreement.  He is not a party to this appeal.

where the drugs and money were kept. Defendant became increasingly agitated when the female who ran the narcotics enterprise in her boyfriend's absence told defendant that others had already come for the money. Defendant drew the handgun, placed it at her neck and said, "I know it's in here. Bitch, I know it's in here."

Defendant eventually shot her and three other occupants in the head. Defendant spread gasoline throughout the room and ignited it. Two of the gunshot victims died at the scene. The other two gunshot victims later succumbed to their injuries.

Defendant raises the following arguments for our consideration.

POINT I

THE POST-CONVICTION RELIEF COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL

A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY HEARINGS, AND PETITIONS FOR POST-CONVICTION RELIEF

B. DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS

5

ATTORNEY FAILED TO CALL [MICHELE PADEN BATTLE] AS AN ALIBI WITNESS

C. DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO CHALLENGE THE IDENTIFICATION BY VERN BREVARD AND THEN FAILED TO CALL HER AS A WITNESS DURING THE SECOND TRIAL

D. DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL SUFFICIENT TO GRANT AN EVIDENTIARY HEARING BASED ON NUMEROUS OTHER CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

I.

Because we affirm substantially for the reasons set forth in Judge Leath's commendably thorough oral opinion, we need not re-address defendant's contentions at length. We add the following remarks.

The Sixth Amendment of the United States Constitution and Article 1, paragraph 10 of the State Constitution guarantee the right to effective assistance of counsel at all stages of criminal proceedings. Strickland v. Washington, 466 U.S. 668, 686 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). Post-conviction relief serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). To establish a

A-4298-18

violation of the right to the effective assistance of counsel, a defendant must meet the two-part test articulated in Strickland. In order to demonstrate ineffectiveness of counsel, "[f]irst, the defendant must show that counsel's performance was deficient. . . . [s]econd, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. In State v. Fritz, our Supreme Court adopted the two-part test articulated in Strickland. 105 N.J. 42, 58 (1987).

To meet the first prong of the Strickland/Fritz test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 466 U.S. at 687. Reviewing courts indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The fact that a trial strategy fails to obtain for a defendant the optimal outcome is insufficient to show that counsel was ineffective. State v. DiFrisco, 174 N.J. 195, 220 (2002) (citing State v. Bey, 161 N.J. 233, 251 (1999)). Furthermore, it is well-established that "a defense attorney's decision concerning which witnesses to call is 'an art,'" and "review of such decision[s] should be 'highly deferential.'" State v. Arthur, 184 N.J. 307, 321 (2005) (quoting Strickland, 466 U.S. at 693, 689).

7

The second prong of the Strickland/Fritz test requires the defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Put differently, counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. Id. at 694. The second Strickland prong is particularly demanding: "the error committed must be so serious as to undermine the court's confidence in the jury's verdict or the result reached." State v. Allegro, 193 N.J. 352, 367 (2008) (quoting State v. Castagna, 187 N.J. 293, 315 (2006)). This "is an exacting standard." State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Allegro, 193 N.J. at 367). "Prejudice is not to be presumed," but must be affirmatively proven by the defendant. Ibid. (citing Fritz, 105 N.J. at 52; Strickland, 466 U.S. at 693).

Short of obtaining immediate relief, a defendant may prove that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. Preciose, 129 N.J. at 462–63. Rule 3:22-10 recognizes the PCR court's discretion to conduct an evidentiary hearing. A defendant is entitled to an evidentiary hearing only when he or she "has presented a prima facie [claim] in support of [PCR]," meaning that a defendant

must demonstrate "a reasonable likelihood that his or her claim will ultimately succeed on the merits." State v. Marshall, 148 N.J. 89, 158 (1997) (citing Preciose, 129 N.J. at 463). A defendant must "do more than make bald assertions that he [or she] was denied the effective assistance of counsel" to establish a prima facie claim entitling him or her to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). See also State v. Porter, 216 N.J. 343, 355 (2013) ("a defendant is not entitled to an evidentiary hearing if the 'allegations are too vague, conclusory, or speculative to warrant an evidentiary hearing[.]'") (quoting Marshall, 148 N.J. at 158) (alteration in original).

When a PCR judge does not hold an evidentiary hearing, our standard of review is de novo as to both the factual inferences drawn by the PCR judge from the record and the judge's legal conclusions. State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). We "view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim." Preciose, 129 N.J. at 463.

PCR is not a substitute for direct appeal. State v. Mitchell, 126 N.J. 565, 583 (1992). Furthermore, Rule 3:22-5 bars PCR for claims that have already been adjudicated on their merits. The rule provides, "[a] prior adjudication upon

the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding" or "in any appeal taken from such proceedings."  "PCR will be precluded 'only if the issue is identical or substantially equivalent' to the issue already adjudicated on the merits."  State v. Afanador, 151 N.J. 41, 51 (1997) (quoting State v. McQuaid, 147 N.J. 464, 484 (1997)).

## II.

We next apply those foundational principles to defendant's current claims. We first address defendant's contention that his trial counsel rendered ineffective assistance by failing to investigate whether defendant's girlfriend, Michelle Paden Battle (Battle), could have provided alibi testimony on his behalf.  Defendant now claims he was with Battle near the time of the robbery-murders.  However, he did not relay that information to counsel.  Rather, defendant's mother called the judge's chambers to alert the court to this possible alibi defense after the second trial had started.

We begin our analysis by noting that defendant's argument is procedurally barred under Rule 3:22-5.  On direct appeal, defendant claimed that the prosecutor violated discovery rules by failing to disclose that Battle could

provide an alibi defense. We reproduce the portion of our opinion rejecting that contention:

> Defendant's final challenge lodges a discovery violation. He maintains the State failed to timely disclose a possible exculpatory witness, that is, a woman who had contacted police three weeks before trial stating defendant was with her at the time of the murders. During jury selection, defendant's mother called the judge's chambers advising that Detective Robert Morris of the Essex County Prosecutor's Office was given a statement from "Michele" who provided an alibi for defendant. Defendant had received similar information from his mother, but insisted the State failed to disclose an exculpatory witness.
>
> In response to the defendant's application, the [trial] judge stated: "You're turning it on its head. Your client would have had this information" because it related to where he allegedly was during the crime. Defendant would have known had he been with the alibi witness. However, he never gave notice of an alibi. Also, the judge aptly noted this was a retrial and an alibi was never before raised. For these reasons, we conclude the argument lacks sufficient merit to warrant additional discussion in our opinion. R. 2:11-3(e)(2).
>
> [452 N.J. Super. at 277–78.]

Although defendant's present alibi defense argument is now couched in terms of ineffective assistance of counsel, we believe it is substantially equivalent to the argument we considered and rejected on direct appeal. See McQuaid, 147 N.J. at 484. Despite this procedural bar, we choose to address

11

defendant's ineffective assistance contention on the merits, as did the PCR judge.

It is well-settled that "[f]ailure to investigate an alibi defense is a serious deficiency that can result in the reversal of a conviction." State v. Porter, 216 N.J. 343, 353 (2013). In Porter, the defendant's girlfriend submitted an affidavit supporting his claim that she was with him at the time the crimes were committed. Id. at 350. The Court remarked that the PCR judge in that case "simply speculated that she would be 'biased.'" Id. at 356. The Court noted that the "proper way to determine [the girlfriend's] veracity was to assess her testimony on direct and cross-examination." Ibid. The Court determined that the defendant made a prima facie showing sufficient to warrant an evidentiary hearing. Id. at 357. See also State v. Jones, 219 N.J. 298, 314 (2014) ("In order to resolve the issue, the PCR court should have heard from witnesses, including trial counsel, whose reason for not ensuring the testimony of an apparent alibi and corroborative witness is unexplained on the record as it presently stands.").

In contrast, the reasons why counsel did not investigate and present Battle as an alibi witness are easily explained from the record as it presently stands. The facts of the case before us are decidedly different from the circumstances that warranted an evidentiary hearing in Porter. Notably, defendant failed to

submit an affidavit or certification from Battle. Rather, he relies on an investigative report—one that was prepared ten years after the crimes were committed—that presents Battle's statement in the form of unsworn hearsay. That investigative report reads:

> On September 7, [2008],[5] [defendant] met with [Battle] at her home at approximately 12:30 pm . . . to celebrate [her] birthday. [Defendant] was with [Battle] the remainder of the day and spent the night at her home. On September 8, [2008], [Battle] woke up between 7:30 am and 8:00 am; [defendant] was sleeping. [Battle] got her daughter and daughter's grandmother . . . ready for a trip . . . [Battle] recalls this trip because it was Memorial Day weekend. [Battle] woke [defendant] between 9:00 am and 9:30 am. . . . [defendant and Battle] remained in the house.

We share Judge Leath's skepticism regarding the investigative report that defendant submitted in lieu of an affidavit or certification from Battle. In sharp contrast to the situation in Porter, here, the PCR judge did not assume the purported alibi witness was not credible simply because of her romantic relationship with defendant. Rather, Judge Leath noted conspicuous inaccuracies in Battle's hearsay statements that were recounted in the

---

[5] We note the report upon which defendant relies incorrectly indicates the incidents occurred on September 7 and 8, 2018. We presume this is a typographical error and that the report means to refer to 2008, when the robbery-murders actually occurred.

investigative report. For example, Judge Leath highlighted that Battle told the defense investigator that she could recall what happened a decade earlier because it was a holiday weekend. But as Judge Leath aptly noted, the murders did not occur over the Memorial Day weekend.

Furthermore, the suspicion of fabrication is bolstered by the timing of events. Indeed, the lack of credibility of the alleged alibi testimony is readily apparent, not because the witness was romantically involved with defendant, but because her potential alibi testimony was first revealed after the second trial had begun. The first trial ended with robbery convictions more than a year before the second trial commenced. The pronounced delay in coming forward with alibi evidence suggests a desperate attempt to fabricate a defense to disrupt the second trial.

We agree with Judge Leath that it was defendant's responsibility to inform his counsel that he was with his girlfriend on the night of the murders. The Sixth Amendment does not require a defense attorney to be clairvoyant. Defendant is now hard-pressed to claim counsel rendered constitutionally deficient assistance by failing to investigate Battle's possible alibi testimony when counsel only learned about it long after the first trial was completed and after defendant had begun serving a life sentence on the robbery convictions. It seems implausible

to us that a defendant could sit next to counsel over the course of a protracted murder trial—spanning fifteen days of trial testimony and involving multiple identification witnesses—and not mention to counsel that he was elsewhere with his girlfriend when the crimes were committed. In view of the strong presumption from Strickland that counsel's conduct falls within the wide range of reasonable professional assistance, we decline to hold that counsel in these circumstances was somehow expected to investigate Battle's possible testimony without having been told by his client at any time during the first trial that he spent the time during the murders with her.

Nor has defendant established a prima facie case for the second prong of the Strickland/Fritz test. We reiterate that defendant was identified by at least six witnesses. Defendant has failed to establish that there is a reasonable probability that Battle's testimony would have produced a different trial outcome. Strickland, 466 U.S. at 694. Having failed to establish a prima facie case under either prong of the Strickland/Fritz test, defendant was not entitled to an evidentiary hearing, much less a new trial based on his recently-minted alibi claim.

15

## III.

We next turn to defendant's contention that his trial counsel was ineffective for failing to challenge the identification testimony of an eyewitness who testified for the State at the first trial but who was not called by either party at the second trial. This contention lacks sufficient merit to warrant extensive discussion. See R. 2:11-3(e)(2).

The witness at issue was outside on Columbia Avenue during the robbery-murder. She heard gunshots and observed two or three African American men run out of the 172 Columbia residence and enter a red jeep. The next day, she was interviewed by police and selected defendant's photograph from an array. During the first trial, she made an in-court identification of defendant. She also identified a photograph of defendant's red jeep. As noted, she did not testify at the second trial.

Defendant now contends counsel was ineffective for failing to challenge her out-of-court identification, asserting that she had been intimidated by a detective who was present during the photo-array procedure. Defendant claims she was initially unable to identify any of the men who ran out of the house, and was then brought to the prosecutor's office where she was re-interviewed and pressured to identify defendant.

16

Defendant's current contention that counsel failed to challenge her identification testimony is belied by the record. In reality, trial counsel requested a Wade/Henderson[6] hearing "to ascertain if her identification [was] the product of her memory of the day of the crime or obtained by information given to her between the date of the incident and the date of the statement." Defendant's present argument also ignores the fact that trial counsel extensively and aggressively cross-examined the witness at the first trial. Nothing in the record suggests that counsel was constitutionally ineffective with respect to this prosecution witness. On the contrary, counsel's cross-examination of this witness evinces professional competence.

Finally, in a strange twist, defendant now also claims his counsel was ineffective for failing to call this same witness at the second trial. As we have noted, she was not called by the State at retrial. We agree with Judge Leath that defense counsel's decision not to subpoena this witness was a strategic decision to which we owe deference. See Arthur, 184 N.J. at 321 (quoting Strickland, 466 U.S. at 693, 689). Moreover, we fail to see how defendant could possibly have been prejudiced by counsel's decision not to call a bystander witness who

---

[6] United States v. Wade, 388 U.S. 218 (1967); State v. Henderson, 208 N.J. 208 (2011).

A-4298-18

claimed to see defendant flee from the murder scene. At best, counsel might have been able to neutralize her identification testimony were he allowed to cross-examine his own witness at the second trial. Neutralizing her inculpatory testimony would not have changed the outcome of a trial at which this witness did not testify at all. Accordingly, defendant has failed to establish either prong of the Strickland/Fritz test.

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION